## COMMONWEALTH vs. JERRY CHASE.

No. 87-764.

Middlesex.    October 12, 1988. — November 16, 1988.

Present: WARNER, CUTTER, & FINE, JJ.

*Burning a Dwelling House. Infernal Machine. Evidence,* Consciousness of guilt, Offer of proof, State of mind, Relevancy and materiality. *Practice, Criminal,* Argument by prosecutor. *Constitutional Law,* Assistance of counsel.

No prejudice to a criminal defendant was demonstrated by a judge's erroneous exclusion of a defendant's explanation of why he had lied to police, properly offered to negate an inference of consciousness of guilt, where no offer of proof was made at trial of the substance of the defendant's explanation. [580-582]

At the trial of indictments for burning a dwelling and possession of an infernal machine, there was no error in the judge's admission of four tape-recorded telephone messages, left by the defendant on a witness's answering machine a day before the fire, which were relevant to show a possible motive and the defendant's angry state of mind. [582-583]

No substantial risk of a miscarriage of justice was created by the prosecutor's improper insinuations in closing argument that the evidence of the defendant's prior bad acts indicated the defendant's propensity to commit the crimes charged, where a very strong case established the defendant's guilt. [584]

A criminal defendant did not demonstrate on appeal that the outcome of his case would have been different but for the alleged lapses of his trial counsel. [584]

INDICTMENTS found and returned in the Superior Court Department on March 5, 1985.

The cases were tried before *James D. McDaniel, Jr.,* J.

*Maureen B. Brodoff,* Committee for Public Counsel Services, for the defendant.

*Michael Fabbri,* Assistant District Attorney, for the Commonwealth.

FINE, J.  A Superior Court jury convicted the defendant of burning a dwelling (G. L. c. 266, § 1) and possession of an infernal machine (G. L. c. 266, § 102A). The dwelling in question, on Norfolk Street in Cambridge, was the residence of the defendant's landlord, one Manuel Barros, and the fire occurred in the early morning hours of January 10, 1985.

According to the evidence presented at trial, the device which, when ignited by a match, caused the fire consisted of two propane canisters, connected to two telephone books by means of masking tape and a coat hanger wire, and a flammable agent, epoxy thinner. When the police questioned the defendant on the morning of the fire, he denied that he had purchased propane canisters or epoxy thinner. The defendant was a witness at trial, however, and admitted in his testimony on direct examination that he had purchased two propane canisters and epoxy thinner at a hardware store in Cambridge on the afternoon of January 9, 1985. There was other circumstantial evidence linking the defendant to the crime. It included, among other things, the proximity of his apartment to the building which was burned, the presence in his apartment on the day of the fire of matchbooks and masking tape similar to the matchbook and masking tape used in starting the fire, and the absence in the apartment of any telephone books. There was also evidence of a possible motive. The defendant had fallen behind in his rent in the months preceding the fire, and Barros, his landlord, had begun eviction proceedings.

In November of 1984, because of the pending eviction, the defendant had written a female acquaintance, Cheryl Caswell, that he was seeking a home for a cat he had adopted. Ms. Caswell was unwilling to assist. Nevertheless, the defendant persistently sought her out on the subject, expressing to her increasing agitation about his uncertain living arrangements. A mediation hearing on the subject of the eviction was held at the Cambridge rent control board on January 8, 1985, two days before the fire. At that hearing, the defendant raised the issue of certain code violations in his apartment. Barros took umbrage at this, and in response raised the issue of the presence in the defendant's apartment, without Barros's permission, of

the cat. The defendant responded by becoming angry and defensive. The outcome of the mediation was that the defendant would have several weeks to pay the rent due. If he should fail to meet the deadline, however, the eviction would proceed, and, presumably, his cat would face an uncertain future. On the day the fire occurred the defendant told police officers investigating it: "he [presumably Barros] couldn't get to me, so he is trying to get to me through the cat."

On appeal the defendant claims: (1) that it was error for the judge not to allow him to explain why, shortly after the fire, he lied to the police; (2) that a substantial risk of a miscarriage of justice was created by the admission in evidence of four taped telephone messages from the defendant to Ms. Caswell a day or two prior to the fire; (3) that a portion of the prosecutor's closing argument created the risk of a miscarriage of justice; and (4) that several errors of his trial attorney resulted in a violation of his right to the effective assistance of counsel. Although errors were made at trial, none, in our view, requires reversal of the convictions.

1. *Evidentiary ruling*. The defendant claims that the judge erred in not permitting him in his direct examination to explain why he lied to the police shortly after the fire about purchasing the propane canisters and epoxy thinner. He was asked by his attorney on direct examination why he had lied. The prosecutor objected, and the judge sustained the objection. The defense attorney requested a side-bar conference, but the judge repeated his ruling, and the trial proceeded.[1] No offer of proof was made. The matter of the lie was brought up again when the prosecutor cross-examined the defendant, but he was not asked by the prosecutor to explain why he lied. No effort was made to put the question to the defendant again when he was questioned on redirect.

We agree with the defendant that the judge's ruling was erroneous. The defendant had an unqualified right to negate the inference of consciousness of guilt by explaining to the

---

[1] The defendant does not argue on appeal that he was denied the opportunity to make an offer of proof.

jury why he had lied. See *Commonwealth* v. *Goldberg*, 212 Mass. 88, 91 (1912); *Commonwealth* v. *Fatalo*, 345 Mass. 85, 86-87 (1962); *Commonwealth* v. *Ferreira*, 373 Mass. 116, 130 (1977); *Commonwealth* v. *Hicks*, 375 Mass. 274, 277 (1978); *Commonwealth* v. *Errington*, 390 Mass. 875, 880 (1984). Moreover, the fact that he lied, indicating consciousness of guilt, was a key factor in the Commonwealth's case.[2]

The Commonwealth contends, however, that the failure of defense counsel to make an offer of proof as to what the defendant would have answered is fatal to the defendant's claim on appeal. We agree. Ordinarily, an offer of proof is required to preserve the right to appellate review of the denial of an offer to introduce evidence through the direct examination of a witness. See *W.A. Robinson, Inc.* v. *Burke*, 327 Mass. 670, 677 (1951); *Commonwealth* v. *Baker*, 348 Mass. 60, 63 (1964); *Commonwealth* v. *Hubbard*, 371 Mass. 160, 174 (1976). See Fed. R. Evid. 103 (a)(2) and Proposed Mass. R. Evid. 103 (a)(2) (offer of proof required unless "the substance of the evidence . . . was apparent from the context within which questions were asked"). Contrast *Muskeget Island Club* v. *Nantucket*, 185 Mass. 303, 306 (1904); *Ford* v. *Worcester*, 339 Mass. 657, 659-660 (1959); *Ratner* v. *Canadian Universal Ins. Co.*, 359 Mass. 375, 385 (1971); *Commonwealth* v. *United Books, Inc.*, 389 Mass. 888, 894-895 (1983) (no offer of proof necessary when judge erroneously excludes expert testimony on basis of proposed witness's qualifications).

The offer of proof requirement serves several purposes. An offer of proof may assist the trial judge in making the correct ruling. And the presence of an offer of proof in a record on appeal enables an appellate court to determine whether an error was made and, if so, how harmful it was to the defendant. See *Commonwealth* v. *Baker*, 348 Mass. at 63-64; *Commonwealth* v. *Kleciak*, 350 Mass. 679, 693 (1966); *Commonwealth* v. *Gordon*, 389 Mass. 351, 353-354 (1983); *Holmgren* v. *LaLiberte*, 4 Mass. App Ct. 820, 821 (1976); Liacos, Massa-

---

[2] We do not agree with the defendant that the consciousness of guilt instruction fell short of what was required. See *Commonwealth* v. *Toney*, 385 Mass. 575, 585-586 n.6 (1982); *Commonwealth* v. *Nadworny*, 396 Mass. 342, 371 (1985).

chusetts Evidence 78 (5th ed. 1981); *Thomas* v. *Wyrick*, 687 F.2d 235, 239 (8th Cir. 1982), cert. denied, 459 U.S. 1175 (1983).

In this case, the trial judge did not need an offer of proof to make the correct ruling. Any explanation the defendant would have sought to offer would have been admissible. Nor is an offer of proof in the record necessary to convince this court that the ruling was erroneous. An offer of proof was required, however, to preserve for appellate review the issue of the degree of prejudice caused by the erroneous ruling. Certainly not every erroneous evidentiary ruling in the course of a criminal trial should result in reversal, only those that are harmful to the defense.

This is not a case in which it is apparent from the context in which the question was asked what answer the defendant would have given. Compare *United States* v. *Wright*, 783 F.2d 1091, 1098-1099 (D.C. Cir. 1986). The prosecutor suggested in his closing argument that the defendant's probable explanation would have been that he was covering up for Joseph Scully, his former roommate. Such an answer would have been consistent with the over-all thrust of the defendant's testimony. We feel fairly assured, however, that, had the defendant been permitted to give that or a similar explanation, it would have made no difference to the jurors who had heard both the defendant's testimony implicating Scully and Scully's testimony denying any role in starting the fire. Without an offer of proof we can only guess what other explanation the defendant might have offered and whether that explanation would have helped his case.

2. *The taped telephone messages.* Four telephone messages, the admissibility of which are in issue, were left by the defendant on Ms. Caswell's telephone answering machine. The messages, lasting no longer than ten to fifteen seconds each, were made a day or so before the fire, either in the late evening hours of January 8 of 1985, or the early morning hours of January 9. Contending that admission of the messages, all highly inflammatory and scurrilous, would deny him a fair trial, the defendant filed pretrial motions to exclude the evi-

dence. The motions were denied, and, not only were the tapes played to the jury, but the defendant was asked several times to repeat the words used. The objection to their admission was not renewed at trial. We need only decide, therefore, whether the admission of the tapes created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Boyer*, 400 Mass. 52, 57 (1987). Even if the defendant's appellate rights had been preserved, however, we would not rule that there was error.

Contending that the judge's ruling admitting the evidence was erroneous, the defendant relies on "[the] fundamental rule that the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purpose of showing his bad character or propensity to commit the crime charged." *Commonwealth* v. *Trapp*, 396 Mass. 202, 206 (1985). We agree with the Commonwealth that the tapes were relevant to show a possible motive for the crime and the defendant's angry state of mind shortly before the fire. See *Commonwealth* v. *Monico*, 396 Mass. 793, 807 (1986); *Commonwealth* v. *Bray*, 19 Mass. App. Ct. 751, 757 (1985). The tapes show that the defendant was in an angry frame of mind after the mediation hearing and that the anger was expressed to Ms. Caswell, who had previously refused to help him locate a home for his cat.

It is a reasonable inference that the anger, whether rational or not, was related not only to the welfare of the cat but also to the eviction and that it was directed not only at Ms. Caswell but also at the landlord, Barros, who was responsible for the pending eviction. The tapes, thus, "constitute[d] a link in the chain of proof." *Commonwealth* v. *Weichell*, 390 Mass. 62, 73 (1983), quoting from *Commonwealth* v. *Abbott*, 130 Mass. 472, 473 (1881). Assuming the relevance to be no more than borderline, we do not think the trial judge abused his wide discretion in determining that the probative value of the taped messages outweighed their prejudice. See *Commonwealth* v. *Blow*, 362 Mass. 196, 201 (1972); *Commonwealth* v. *Helfant*, 398 Mass. 214, 225 (1986). Contrast *Commonwealth* v. *Yelle*, 19 Mass. App. Ct. 465, 471-472 (1985).

3. *The prosecutor's closing argument.* The prosecutor suggested to the jury that the "type of person" who would leave messages such as the four admitted in evidence was the same "type of person" who would commit the crime charged. The argument was improper. It suggested that the jurors could consider evidence showing prior bad acts of the defendant, admitted in evidence for the limited purpose of showing a possible motive and the defendant's angry state of mind at a relevant time, as indicating the defendant's general propensity to commit the crime. Compare *Commonwealth* v. *Burke*, 373 Mass. 569, 575 (1977); *Commonwealth* v. *Royce*, 20 Mass. App. Ct. 221, 226 (1985). More subtle, but possibly also improper for similar reasons, we think, was the further suggestion that the "kind of man" who would turn on a friend (Scully) by implicating him falsely in a crime is the same "kind of man" who would set a fire. Defense counsel, however, made no objection to the closing argument. Given what we view as a very strong case establishing the defendant's guilt, we do not think any impropriety in the closing argument gave rise to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Roberts*, 378 Mass. 116, 122-124 (1979).

4. *Ineffective assistance of counsel.* Also because of the strength of the case against the defendant, we do not think that, but for the lapses of defense counsel, the outcome of the case would have been different. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). As the judge had denied the pretrial motions of similar import, an objection to the admission of the tapes at trial would probably have been overruled. See *Commonwealth* v. *Fredette*, 396 Mass. 455, 464-465 (1985). An objection to the prosecutor's closing argument might have succeeded, but we are fairly sure the improper argument did not influence the jury to reach a verdict they would not otherwise have reached. The defendant has not argued that his right to effective assistance of counsel was denied because attentive counsel would have made an offer of proof when the judge declined to permit the defendant to explain his lie to the police.

*Judgments affirmed.*