## COMMONWEALTH *vs.* JOSEPH DELONG.

No. 99-P-1487.

Middlesex. June 11, 2003. - December 4, 2003.

Present: ARMSTRONG, C.J., SMITH, & DUFFLY, JJ.

*Practice, Criminal,* Assistance of counsel, New trial, Instructions to jury, Argument by prosecutor, Jury and jurors. *Constitutional Law,* Admissions and confessions, Search and seizure. *Search and Seizure,* Inventory, Automobile. *Evidence,* Prior misconduct.

A Superior Court judge properly denied a criminal defendant's motion for a new trial based on ineffective assistance of counsel claims arising from counsel's failure to challenge the impoundment and inventory search of defendant's vehicle and from the admission in evidence of the defendant's bad acts without objection or a request for a limiting instruction at the trial of two indictments of unarmed robbery, where counsel's decision not to object to the inventory search was not manifestly unreasonable, in that the impoundment and inventory search of defendant's vehicle were proper [128-129], and it was a reasonable tactical decision for counsel not to request a limiting instruction regarding evidence of a subsequent attempted robbery, which was admissible as bad act evidence showing the identity of the defendant as the robber in the two charged incidents [129-132].

Counsel at a criminal trial was not ineffective because he failed to object to the prosecutor's opening statement and closing argument and because he failed to object to the judge's discharge of a juror during the trial, where the opening statement referred in context to correctly admitted evidence, and the challenged aspect of the closing argument constituted a permissible inference and was accompanied by a jury instruction that closing arguments were not evidence; and where it was not manifestly unreasonable for defense counsel to refrain from objecting to the discharge of a juror. [132-135]

In a motion for a new trial of two indictments charging unarmed robbery on the ground of newly discovered evidence, the defendant made an adequate showing of a substantial issue warranting an evidentiary hearing on his motion, where it was doubtful that defendant's trial counsel would have been aware of the evidence or could have discovered it through reasonable pretrial diligence. [135-137]

INDICTMENTS found and returned in the Superior Court Department on March 26, 1998.

The cases were tried before *Robert Malcolm Graham,* J., and a motion for a new trial, filed on May 10, 2000, and a motion for reconsideration were heard by him.

*Bernard Grossberg* for the defendant.

*Sheryl F. Grant,* Assistant District Attorney, for the Commonwealth.

SMITH, J. On April 12, 1999, a jury trial began on two indictments that had been amended to charge the defendant with the unarmed robbery of two different Star Market stores in Newton on January 14, 1998.[1] On April 16, 1999, the jury found the defendant guilty of both robberies.

Represented by new counsel, the defendant filed a motion for a new trial alleging, among other things, ineffectiveness of trial counsel. He requested an evidentiary hearing. He later filed an amended motion for a new trial, claiming that newly discovered evidence consisting of a surveillance tape and still photographs was exculpatory and warranted a new trial. Again, he requested an evidentiary hearing. The judge denied the motion as amended without granting an evidentiary hearing. The judge also denied the defendant's motion for reconsideration of the denial. The defendant filed separate notices of appeal from the judgments and from the denial of his motion for a new trial and his motion for reconsideration. The appeals were consolidated.[2] Although the defendant did file a direct appeal from the judgments, the defendant's appeal focuses on the denial of his motion for a new trial and the denial of his request for an evidentiary hearing. We review his claims accordingly.

1. *Denial of the defendant's motion for new trial.* In his initial motion for a new trial, the defendant claims that his trial

---

[1]The defendant was initially charged with two counts of armed robbery on January 14, 1998, and one count of attempted armed robbery on January 19, 1998. The count of attempted armed robbery was severed; the Commonwealth filed a nolle prosequi to so much of the armed robbery indictments that alleged a dangerous weapon, a gun, was used in the robberies.

[2]The defendant also made a motion in this court to compel the trial judge to make findings of fact and rulings of law on his motion for a new trial. The motion was ultimately denied by a single justice on March 27, 2002, and the defendant appealed from that denial. The appeal from the single justice order was consolidated with the other appeals. In view of our disposition of the case, we vacate the order of the single justice without separate discussion.

counsel was ineffective because, although he did move to suppress certain evidence found in the defendant's vehicle — which motion was denied after an evidentiary hearing — he failed to challenge the impoundment and inventory search of the vehicle. The defendant also contends that the trial judge erred in allowing the admission of evidence of the defendant's bad acts and that his counsel was ineffective for not objecting to it.

a. *Facts from evidentiary hearing on motion to suppress.* We summarize the facts found by the pretrial motion judge in regard to the defendant's arrest and the search of his vehicle. On January 14, 1998, at about 10:00 A.M., in the Chestnut Hill section of Newton, a white male wearing a dark hood with dark material that covered the lower portion of his face, a light sweat shirt, and dark sunglasses was shown on a Star Market's surveillance camera to be approaching the customer service booth. That individual told the clerk that he had a gun, although none was shown, and ordered the clerk to put money into a bag. The individual was described as being in his early twenties, five feet ten inches tall, and weighing 180 to 200 pounds.

At approximately 9:00 P.M. that same day, the Star Market in the Auburndale section of Newton was robbed in a similar manner. The photographs from the videotape of that courtesy booth showed that the robber resembled the person who robbed the Chestnut Hill store and was dressed in a similar fashion, although with a different sweat shirt.

Detective Nils Anderson of the Newton police department was assigned to investigate both robberies. He wrote up the physical description on a short flier with a rough sketch of the suspect and distributed it to the Newton patrol officers and the police in surrounding communities. Anderson later learned that, on January 17, 1998, there had been a third robbery of a Star Market, this time in the Brighton section of Suffolk County. The description of the suspect in that robbery was similar to that of the perpetrator of the prior robberies with the additional information that the robber's bottom teeth were "rotten and discolored." Anderson met with detectives from the Boston police department and obtained photographs from the January 17 surveillance videotape. After reviewing the videotape from the Brighton robbery, Anderson believed that the perpetrator of

the Brighton robbery was the same person who had robbed the two Newton Star Markets.

The police set up surveillance in the Newtonville Star Market, the only Star Market in Newton that had not yet been robbed. On January 19, 1998, Newton police officer Pedro Lopez was in that Star Market, in plainclothes, working undercover. At around 1:45 P.M., a store employee summoned Lopez to view the surveillance monitor because there was someone at the courtesy booth who fit the description of the perpetrator in the other robberies. The man was wearing dark sunglasses, even though the day was overcast, and had a dark hat pulled down over his forehead. Although he had no covering on the lower portion of his face, he kept pulling up at the collar of his pullover shirt. Lopez went toward the courtesy booth, purchased a scratch ticket from a nearby machine, and stood near the suspect in order to observe him more closely. The employee in the booth gave the suspect a job application. The suspect waited a while with the application, then took his sunglasses off, looked around at the people in the area, and left the store. Lopez told Star Market personnel to contact the Newton police department for backup and then followed the suspect out of the store.

The suspect proceeded toward Walnut Street, but once he realized he was being followed, he turned around and confronted Lopez. Lopez identified himself and told the suspect he wanted to ask him a few questions. The man replied, "What did I do wrong?" Lopez told the suspect that he matched the description of someone to whom the police wanted to talk and asked the suspect to accompany him back to the store. The suspect agreed. While they were walking back toward the store, Lopez asked the suspect where he had been going. The suspect told him he had been going to his car that was parked behind the laundromat.[3]

As Officer Lopez was walking with the suspect, Newton police officers, including Detective Anderson, arrived on the

---

[3]The parking lot behind the laundromat is some distance away from the Star Market and is a private lot for patrons of the laundromat only. Customers of Star Market routinely park in the store's parking lot or in the municipal lot across the street. Additionally, the suspect was not taking the most direct route from the Star Market to the location where his car was parked.

scene. Lopez told Anderson what had occurred. Anderson had with him the photograph from the Brighton robbery and Anderson noted that the suspect matched the description he had been given. Anderson noticed that the suspect was missing two front bottom teeth, which corresponded with the description he had received. Anderson believed that the suspect was the man in the photographs obtained from the previous robbery sites.

Lopez, in Anderson's presence, asked the suspect his name. The suspect said his name was Joseph Delong (the defendant), but he did not have any identification with him. The defendant told the officers that his identification was in the glove compartment of his vehicle and gave Lopez the keys to the vehicle. As Lopez was heading toward the parking lot behind the laundromat, Anderson radioed for a warrant check and a check of the defendant's record. Anderson learned that the defendant had a history of armed robberies. Anderson placed the defendant under arrest and read him his Miranda rights.

Meanwhile, Officer Lopez had gone to the laundromat parking lot and found only one car there. Lopez opened the defendant's car with the keys and retrieved some form of license or registration. While inside the car, Lopez noticed a plastic bag, in which he found a store receipt. Those items were left in the vehicle. Lopez then returned to where Anderson and the defendant were standing and showed the defendant's identification to Anderson.

Detective Anderson then proceeded to the defendant's car and called for a tow truck. The car was towed to the Newton police station where it was searched for inventory purposes pursuant to a written inventory search policy. During the search, police found and seized a stocking cap, a green sweat shirt, a receipt from an Ames department store, and clothing tags. The Ames receipt was for clothing items (including a hat, glasses, and sweat shirt) that had been purchased about one-half hour earlier in Waltham, a location about two miles from the Newtonville Star Market. The clothing tags appeared to have been from those recently purchased items, the clothing and glasses that the defendant was wearing when he went into the Newtonville Star Market.

The motion judge found that the defendant had given Lopez

consent to enter his vehicle and to search the glove compartment for identification. The judge found, however, that the defendant had not given Lopez consent to search the entire vehicle. Although the plastic bag was in plain view, the store receipt was not and therefore the judge ruled the contents of the search of the plastic bag were outside the scope of the defendant's consent. The judge ruled, however, that because the receipt was left in the vehicle, the receipt and other items were lawfully seized as a result of the inventory search.

The defendant, on appeal, claims that his trial counsel was ineffective because he conceded that the inventory search was proper, although the defendant now alleges the police officers failed to follow department regulations. Furthermore, the defendant contends that the motion judge who ruled on his motion for a new trial failed to develop properly the record in regard to this claim.

b. *Standard of review.* A trial judge may allow a motion for new trial only "if it appears that justice may not have been done." Mass.R.Crim.P. 30(b), as amended, 435 Mass. 1501 (2001). "A judge's decision to deny a motion for a new trial . . . will not be disturbed unless a review of the defendant's case shows that the decision, if not reversed, will result in 'manifest injustice.' " *Commonwealth* v. *Watson*, 409 Mass. 110, 114 (1991), quoting from *Fogarty* v. *Commonwealth*, 406 Mass. 103, 110 (1989). "Where, as here, the motion judge was also the trial judge, the decision of the motion judge is entitled to special deference." *Commonwealth* v. *Barnette*, 45 Mass. App. Ct. 486, 493 (1998). "[W]here a claim of ineffective assistance of counsel is the basis for the defendant's motion for new trial, appellate courts accord substantial deference to the trial judge's favorable evaluation of a trial counsel's performance. *Commonwealth* v. *DeVincent*, 421 Mass. 64, 69 (1995)." *Ibid.*

In order to succeed on a claim of ineffective assistance of counsel, the defendant must show "serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer," and that such inadequacies "likely deprived the defendant of an otherwise available, substantial

ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). Thus, in order to have prevailed on his motion for a new trial, the defendant needed to show that counsel's decision not to challenge the inventory search was "manifestly unreasonable." *Commonwealth* v. *Adams,* 374 Mass. 722, 728 (1978). Here, the judge ruled that trial counsel was not ineffective.

c. *Propriety of inventory search.* We agree with the defendant that the trial judge, in denying the defendant's motion for a new trial, did not specifically address whether trial counsel was ineffective for not challenging the inventory search. We need not, however, remand for further findings on this issue because the existing findings demonstrate that a challenge to the inventory search would not have been successful.

"[T]he legitimacy of an inventory search of an impounded vehicle involves two related, but distinct, inquiries: (1) whether the impoundment of the vehicle leading to the search meets constitutional strictures, and (2) whether the conduct and scope of the search itself meet those strictures." *Commonwealth* v. *Ellerbe,* 430 Mass. 769, 773 (2000).

Here, the impoundment of the defendant's vehicle was proper. At the time of his arrest, there was no one with the defendant who could remove the vehicle from where it was parked and the vehicle was parked in a private lot. "[I]t is appropriate for the police to spare the private parking lot owner the burden of dealing with the vehicle's presence when the driver has been arrested." *Id.* at 776. Additionally, the defendant did not suggest any alternatives to having his vehicle towed by the police. *Commonwealth* v. *Caceres,* 413 Mass. 749, 751 (1992). These factors supported impoundment.

Anderson testified that the defendant's vehicle was searched for inventory purposes pursuant to a written policy. That testimony was sufficient to support the judge's ruling that the inventory search was valid. See *Commonwealth* v. *Raedy,* 24 Mass. App. Ct. 648, 651-652 (1987). The defendant has submitted, as an appendix to his motion for a new trial, a copy of the Newton police department's written inventory policy. There is nothing in that document that would have required the trial judge to conduct an evidentiary hearing on the issue.

Finally, the inventory search was not a pretext as the judge

credited Anderson's testimony that he did not learn of the receipt until the inventory search was conducted at the police station. In sum, the impoundment of the defendant's vehicle and the inventory search were reasonable, and counsel was not ineffective for not challenging the inventory search. *Commonwealth* v. *Conceicao*, 388 Mass. 255, 264 (1983).

d. *Admission of evidence of subsequent bad acts.* Prior to trial, the Commonwealth filed a motion to allow admission in evidence of the events that occurred on January 19, 1998, the day the defendant was arrested outside the Newtonville Star Market, and on January 17, 1998.[4] The defendant moved to exclude admission of this evidence. After a hearing, the trial judge allowed the Commonwealth's motion concerning events on January 19, 1998. At trial, when witnesses testified to the events of January 19, 1998, defense counsel did not object.

It is within the trial judge's discretion to admit evidence of acts committed subsequent to the offenses for which the defendant is on trial. *Commonwealth* v. *Shraiar*, 397 Mass. 16, 26 (1986). "Such evidence may not be introduced to prove the bad character or criminal propensity of the accused, *id.*, but may be admitted in the judge's discretion to establish a common scheme or plan, pattern of operation, intent, motive, or state of mind at the time of the crime. . . . To be sufficiently probative, however, the evidence of postcrime conduct 'must be connected with the facts of the case or not be too remote in time.' " *Commonwealth* v. *Cardarelli*, 433 Mass. 427, 434 (2001), quoting from *Commonwealth* v. *Barrett*, 418 Mass. 788, 794 (1994).

The Commonwealth must also show that the particular event and the circumstances of the crimes being tried have "similarities so as to be meaningfully distinctive, that is, that there exists a uniqueness or particularly distinguishing pattern of conduct common to the . . . incidents." *Commonwealth* v. *Leonard*, 428 Mass. 782, 786 (1999). See, e.g., *Commonwealth* v. *Lacy*, 371 Mass. 363, 366 (1976) (evidence probative where defendant wore clothes that matched perpetrator's description, gained access to building in same manner, and identification card was

---

[4]The judge did not allow evidence pertaining to events that occurred on January 17, 1998, the day of the Brighton Star Market robbery.

same); *Commonwealth* v. *Kater*, 432 Mass. 404, 415-416 (2000) (meaningfully distinctive where both kidnapped girls "were bound in a way that was designed to cause death by strangulation when the subject's head fell forward from sleep or fatigue" even though kidnappings were ten years apart); *Commonwealth* v. *Mahan*, 18 Mass. App. Ct. 738, 741 (1984) (evidence probative of identity where men fit description of robbers and gun found in car was similar to one used in robbery).

"[T]hese preliminary determinations are committed to the sound discretion of the [trial] judge who also must consider whether the probative value of the evidence is outweighed by its prejudicial effect." *Commonwealth* v. *Leonard, supra* at 786. The judge's decision "will be upheld on appeal absent palpable error." *Ibid.*, quoting from *Commonwealth* v. *Marrero*, 427 Mass. 65, 68 (1998).

Here, the Commonwealth sought to admit the bad act evidence to show the identity of the defendant as the person who robbed the Star Markets in Newton. In order to show that there were significant similarities so as to be meaningfully distinctive, the Commonwealth presented the following evidence. Each of the three incidents occurred in a Star Market in Newton. In all three incidents, the lone perpetrator involved was described as a white male, approximately five feet ten inches tall, wearing sweat pants, a sweat shirt, sunglasses, and clothing covering his head. In each instance, the person tried to cover the bottom portion of his face. The individual approached a courtesy booth in the stores. In the robbery at the Auburndale Star Market and the incident at the Newtonville Star Market, the individual asked to see the manager. In the Chestnut Hill Star Market and the Auburndale Star Market, the individual kept his sunglasses on his face and in the Newtonville Star Market, the individual only removed his sunglasses after looking around while waiting in line for quite some time at the courtesy booth. The person was also calm throughout each of the three incidents.

These facts were sufficient to show that the similarities among the three events were meaningfully distinctive such that the attempted robbery evidence was admissible as subsequent bad act evidence. The Commonwealth also presented sufficient evidence

that the incidents were not so remote in time, i.e., that the defendant was in the Newtonville Star Market only five days after the other two robberies.

The defendant claims that admission of this bad act evidence cannot be reconciled with a prior judge's severance order. We disagree. "[T]he criteria for trial joinder are not shown to be identical with those for admission of 'bad acts.' " *Commonwealth* v. *Delrio*, 22 Mass. App. Ct. 712, 718-719 (1986). Even if one indictment is severed from another, evidence regarding one may be used at trial for the other. Compare *Commonwealth* v. *Feijoo*, 419 Mass. 486, 495 (1995); *Commonwealth* v. *Piper*, 426 Mass. 8, 12 (1997); *Commonwealth* v. *Souza*, 39 Mass. App. Ct. 103, 112 (1995). Thus, there was no error in the admission of the subsequent bad act evidence.

The defendant claims that the trial judge erred when he failed to give a limiting instruction after the subsequent bad acts were admitted in evidence. A judge is not required to give a limiting instruction regarding the purpose for which evidence is offered unless so requested by the defendant. *Commonwealth* v. *Leonardi*, 413 Mass. 757, 764 (1992). Here, trial counsel did not request a limiting instruction, and the defendant thus claims that his counsel was ineffective.

Counsel's decisions that qualify as "arguably reasoned tactical or strategic judgments" should not be second-guessed. *Commonwealth* v. *Rondeau*, 378 Mass. 408, 413 (1979). To sustain a claim of ineffective assistance of counsel, we require that such judgments be "manifestly unreasonable," *Commonwealth* v. *Adams*, 374 Mass. at 728, i.e., that the defendant must have lost "an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. at 96.

Here, once the bad act evidence was properly admitted, defense counsel attempted to utilize the evidence to bolster his defense. For example, he argued that the incident at the Newtonville Star Market showed that the defendant was innocent of the charged robberies based on the differences between the robberies and the attempted robbery on January 19. This argument supported the defendant's theory that he had been misidentified as the robber as a result of his arrest at the Newtonville Star Market. The defendant also argued that it would be unreason-

able to believe that the robber, who had just stolen $10,000, would have gone to an Ames Department store to buy items on sale to perpetrate another robbery. In addition, the defendant argued that the fact that the defendant's car was locked supported the conclusion that the defendant was innocent.

We hold that it was a reasonable tactical decision not to request a limiting instruction, as such instructions typically highlight the permissible uses of evidence, as well as the limitations. See *Commonwealth* v. *Newell*, 55 Mass. App. Ct. 119, 130 (2002). Here, this tactic was not manifestly unreasonable and, therefore, the defendant did not receive ineffective assistance of counsel.

2. *Review of claims not raised in motion for new trial.* On appeal, the defendant claims that his trial counsel was ineffective because he failed to object to the prosecutor's opening statement and closing argument and because he failed to object to the excusal of a juror by the judge during the trial. Although the claim of ineffective assistance of counsel was raised in the defendant's motion for a new trial, that claim was specifically linked to the argument that counsel was ineffective in regard to the inventory search and the admission in evidence of subsequent bad act testimony. Nothing was stated in the initial (or amended) motion about these two additional issues. We, therefore, consider those issues under the substantial risk of a miscarriage of justice standard if we find error. *Commonwealth* v. *LeFave*, 430 Mass. 169, 172-174 (1999).

a. *Failure to object to the prosecutor's allegedly improper opening statement and closing argument.* The defendant claims that the Commonwealth's opening statement and closing argument were improper because the Commonwealth focused on the attempted robbery on January 19, and the prosecutor failed to advise the jury to use such evidence only for the purpose of identity. The defendant also claims that the Commonwealth made a false and improper statement in its closing argument with respect to the Ames Department Store bag found in the defendant's vehicle. The defendant claims that his trial counsel was ineffective in not objecting to the prosecutor's comments in his opening statement and closing argument.

We have recognized that "[i]n closing argument, counsel

may argue the evidence and the fair inferences which can be drawn from the evidence." *Commonwealth* v. *Haas*, 398 Mass. 806, 812-813 (1986), quoting from *Commonwealth* v. *Hoffer*, 375 Mass. 369, 378 (1978). See *Commonwealth* v. *Lamrini*, 392 Mass. 427, 431 (1984); *Commonwealth* v. *Corriveau*, 396 Mass. 319, 336 (1985). Contrast *Commonwealth* v. *Chase*, 26 Mass. App. Ct. 578, 584 (1988). In addition, any claim of improper argument must be considered in the context of the entire argument and in light of the judge's instructions and the evidence introduced at trial. *Commonwealth* v. *Haas, supra* at 812-813. *Commonwealth* v. *Viriyahiranpaiboon*, 412 Mass. 224, 231 (1992).

Because the evidence regarding the Newtonville attempted robbery was correctly admitted, it was entirely proper for the Commonwealth to refer to this evidence in its opening statement and closing argument.[5] Although the prosecutor did not specifically inform the jury that the evidence was only relevant to identification, consideration of the entire opening statement and closing argument makes clear that this is the context in which the prosecutor referred to the evidence. There was no error.

The defendant also claims that, when the prosecutor argued in his closing that the defendant may have had an Ames bag with him on January 19, 1998, he referred to facts not in evidence. The Commonwealth presented evidence at trial that in the Chestnut Hill and Auburndale robberies, the defendant had a bag with him, although in the second robbery, the bag was not seen until the defendant entered the Star Market money room. There was also testimony that the police found an Ames receipt in the defendant's car after he was arrested on January 19, 1998. The receipt indicated that the defendant had purchased the items he was wearing forty-five minutes earlier at the Ames store. No Ames bag, however, was found. The Commonwealth also presented testimony that when the defendant left the Newtonville Star Market, he went down some stairs that had a trash barrel located nearby.

---

[5]Because the references to the evidence were proper, any objections thereto would have been futile. Accordingly, despite the defendant's assertion to the contrary, it was not ineffective assistance of counsel when counsel chose not to object. See *Commonwealth* v. *Gaeten*, 15 Mass. App. Ct. 524, 533 (1983).

Based on this evidence, it was permissible for the prosecutor to argue the inference that the defendant had had a bag with him, but may have disposed of it. The judge also instructed the jury that closing arguments were not evidence. See *Commonwealth* v. *Caputo*, 439 Mass. 153, 167 (2003); *Commonwealth* v. *Rupp*, 57 Mass. App. Ct. 377, 385 (2003). There was no error.

b. *Discharge of nondeliberating juror.* For the first time on appeal, the defendant raises a claim that the judge committed error when he dismissed a juror during the trial without holding a hearing, without stating his reasons, and without the defendant being present. He also contends his trial counsel was ineffective because he did not object to the judge's actions.

The record shows that at 1:30 P.M. on the fourth day of trial, the judge announced, "Good afternoon, ladies and gentlemen. Welcome back. You'll notice that we are one short. I assure you that there was an unavoidable situation involving this juror." There was no objection and defense counsel immediately started his closing argument.

General Laws c. 234A, § 74, as inserted by St. 1982, c. 298, § 1, states: "The court shall have authority to excuse and discharge an impaneled juror prior to jury deliberations after a hearing upon a finding of extreme hardship." The record is silent as to whether a hearing was held and also as to the nature of the circumstances that resulted in the judge's discharge of the juror because of an "unavoidable situation." The record does describe, however, with reasonable certainty, who the discharged juror was and the reason for his discharge.

During the trial, one of the victims of the unarmed robbery at the Chestnut Hill Star Market was asked by the prosecutor if she saw anyone in the courtroom who looked like the person who robbed the store. She selected one of the jurors as the person who was the robber. In his closing argument, defense counsel indicated that the discharged juror was the individual singled out by the eyewitness as the person who robbed the store. The Commonwealth, in its brief, does not dispute the defendant's claim.

It is clear from the judge's comments that he had been informed at a lobby conference of the "unavoidable situation"

that led to the juror's discharge. That conference, however, was not recorded. A reasonable inference may be drawn from the lack of objections from both parties that defense counsel was present at the lobby conference and agreed to the discharge of the juror. Thus, it may be inferred that defense counsel did not object for tactical reasons, i.e., he did not want that individual to be on the jury. In these circumstances, we cannot say his decision was manifestly unreasonable.[6] *Commonwealth* v. *Adams*, 374 Mass. at 728.

In addition, G. L. c. 234A, § 74, states, "[A]ny irregularity in . . . discharging . . . jurors . . . shall not be sufficient . . . to set aside a verdict unless objection to such irregularity or defect has been made as soon as possible after its discovery or after it should have been discovered and unless the objecting party has been specifically injured or prejudiced thereby." The defendant has failed to show that he was prejudiced by the juror's discharge. "The defendant participated in the selection of sixteen jurors, of whom the juror above was one, and declared himself satisfied with the panel." *Commonwealth* v. *Olszewski*, 416 Mass. 707, 721 (1993), cert. denied, 513 U.S. 835 (1994). In these circumstances, there was no error.

Finally, we emphasize once again that such lobby conferences should be on the record.

3. *Claim of newly discovered evidence.* In his amended motion for a new trial, the defendant claimed that, as a result of newly discovered exculpatory evidence, he was entitled to a new trial or, at minimum, to an evidentiary hearing on his motion. The newly discovered evidence consisted of still photographs and surveillance film taken on January 14 at the Brighton Star Market, which was robbed on January 17, 1998.

---

[6]Considering the fact that appellate counsel claims that there was no hearing, we are puzzled that he did not make the claim as part of his motion for a new trial and accompany it with an affidavit of trial counsel stating that there was no hearing. See *Commonwealth* v. *Peloquin*, 437 Mass. 204, 210-211 (2002) (court stated that counsel was not ineffective because decision not to request jury instruction was a tactical decision; court's conclusion was reinforced by lack of affidavit from trial counsel suggesting he may have erred in not requesting an instruction). Appellate counsel also claims that if there was a hearing, the defendant was not present and did not know of the reason for a dismissal. Again, the absence of an affidavit from the defendant suggests otherwise.

The Suffolk County prosecutor introduced the surveillance film at the defendant's trial in Suffolk County for the purpose of showing that the defendant "cased" that store three days before he robbed it.

According to the defendant, the surveillance film was taken at 8:13 P.M. on January 14. That was the same evening that the prosecutor here (in Middlesex County) argued that the defendant robbed the Auburndale Star Market at 8:45 P.M. The defendant claims that because he presented an alibi defense, i.e., that he was at a Ground Round in Waltham, he could not have committed the Auburndale Star Market robbery. The defendant further contends that, because the same person committed both the Chestnut Hill Star Market and Auburndale Star Market robberies, if the January 14 videotape did not show the defendant, then he could not have committed either robbery. The defendant's trial counsel submitted an affidavit stating that he did not know of the January 14 surveillance tape at the time he went to trial on the two Star Market robberies in Middlesex County, i.e., those at issue here.

The judge denied the defendant's motion for a new trial, finding that the purported "new" evidence was reasonably discoverable by the defendant or his attorney at the time of trial. On appeal, the defendant has repackaged this claim as one alleging prosecutorial misconduct for failure to disclose exculpatory evidence and as one of ineffective assistance of counsel, i.e., that his trial counsel was ineffective for failing to obtain the evidence.

"A defendant seeking a new trial on the ground of newly discovered evidence must establish both that the evidence is newly discovered and that it casts real doubt on the justice of the conviction." *Commonwealth* v. *Grace*, 397 Mass. 303, 305 (1986). *Commonwealth* v. *Pike*, 431 Mass. 212, 218 (2000). See *Commonwealth* v. *Ortiz*, 393 Mass. 523, 537-538 (1984). "The allegedly new evidence must be material and credible, see *Commonwealth* v. *Brown*, 378 Mass. 165, 171-172 (1979), and 'carry a measure of strength in support of the defendant's position.' " *Commonwealth* v. *Pike*, *supra* at 218, quoting from *Commonwealth* v. *Grace*, *supra* at 305. A defendant must also show that the evidence was unknown to the defendant or his counsel,

and not discoverable through "reasonable pretrial diligence." *Commonwealth* v. *Grace, supra* at 306.

Here, the trial judge found that the evidence at issue was reasonably discoverable before trial. However, we think that it is doubtful, on this record, that at the time he represented the defendant in the Middlesex County Star Market robberies, trial counsel would have been aware of the January 14 surveillance tape made in Suffolk County or could have discovered it through "reasonable pretrial diligence" especially where the Middlesex County district attorney's office denies that it had possession of the surveillance tape.

An evidentiary hearing is required if the defendant's motion and affidavits raise a substantial issue. Mass.R.Crim.P. 30(c)(3), as amended, 435 Mass. 1502 (2001). "Whether a substantial issue has been raised depends on the seriousness of the issue and the adequacy of the defendant's showing." *Commonwealth* v. *Britto*, 433 Mass. 596, 608 (2001). *Commonwealth* v. *Goodreau*, 58 Mass. App. Ct. 552, 554-555, further appellate review granted, 440 Mass. 1103 (2003). We recognize that the decision not to hold an evidentiary hearing is entitled to substantial deference, see *Commonwealth* v. *DeVincent*, 421 Mass. at 69, but we hold that the defendant made an adequate showing and that an evidentiary hearing should have been held.

The judgments are affirmed. The order denying the defendant's amended motion for a new trial is vacated, and that matter is remanded to the Superior Court for an evidentiary hearing consistent with this opinion. The March 27, 2002, order of the single justice is vacated.

*So ordered.*