NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-461

COMMONWEALTH

vs.

JAMES M. O'NEIL.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 1981, after a jury trial, the defendant was convicted of two counts of rape of a child and two counts of indecent assault and battery on a child under fourteen years of age. The sexual assaults occurred in 1978, and the victims, D.R. and R.W., were eleven and twelve year old boys at the time. On direct appeal, this court affirmed the defendant's convictions in Commonwealth v. O'Neil, 14 Mass. App. Ct. 978 (1982). The defendant's first motion for new trial was denied without an evidentiary hearing in 1985. In 2020, the defendant filed a second motion for new trial, the motion judge held an evidentiary hearing, and later denied the motion in a thoughtful and comprehensive memorandum. The judge subsequently denied the defendant's motion to reconsider the denial. On appeal, the defendant raises a

variety of claims concerning the denial of the new trial motion.[1]
We affirm.

Discussion. 1. Victims' 2006 statements. The defendant
claims that he is entitled to a new trial based on claimed newly
discovered evidence that the victims, nearly three decades after
their sexual assaults, purportedly recanted their identification
of the defendant as the man who raped them. We disagree.

"A defendant seeking a new trial on the ground of newly
discovered evidence must establish both that the evidence is
newly discovered and that it casts real doubt on the justice of
the conviction." Commonwealth v. Domino, 465 Mass. 569, 582
(2013), quoting Commonwealth v. Grace, 397 Mass. 303, 305
(1986). The defendant "also bears the burden of demonstrating
that any newly discovered evidence is admissible." Commonwealth
v. Weichell, 446 Mass. 785, 799 (2006). "In considering a
motion for a new trial based on newly discovered evidence, it
[is] [within] the judge's discretion to determine the weight and
import of affidavits submitted . . . The abuse of discretion
standard is not altered when the newly discovered evidence is an
alleged recantation by a material witness" (citation omitted).

---

[1] The defendant's separate appeals from the orders denying his
motions for new trial and to reconsider were consolidated for
briefing and decision. The defendant failed to address any
aspect of the memorandum and order on the latter motion, waiving
that appeal.

Domino, supra.  "In such circumstances, 'the duty of the trial judge is to give grave consideration to the credibility of the witness's new testimony.'"  Id. at 582-583, quoting Commonwealth v. Robertson, 357 Mass. 559, 562 (1970).

Here, the claimed newly discovered evidence is the two victims' 2006 purported recantations made to the defendant's private investigator, John Ahern.  In the most generous light, these statements call into question whether the victims had properly identified the defendant as their rapist.[2]  But it is difficult to conclude that these statements are newly discovered evidence.  "Newly discovered evidence is evidence that was unknown to the defendant or counsel and not reasonably discoverable by them at the time of trial."  Commonwealth v. Sullivan, 469 Mass. 340, 350 n.6 (2014), citing Grace, 397 Mass. at 306.  As both victims were available to the defendant at trial, and both were cross-examined, the reliability or accuracy of their identification of the defendant was reasonably discoverable at trial.  See Grace, supra ("The defendant has the

---

[2] As the motion judge found, what the victims purportedly told Ahern was not entirely exculpatory.  In fact, R.W. maintained that the defendant may well have been the perpetrator, and D.R. never said that he was not, despite language in Ahern's report suggesting otherwise.  However, at trial, R.W. testified that, when he saw the defendant during the showup identification procedure, there was no doubt in his mind that the defendant was the person who had raped him.  D.R. testified that during the showup, he noted the defendant's distinctive teeth and voice, and recalled:  "I said that was definitely him."

3

burden of proving that reasonable pretrial diligence would not have uncovered the evidence").  In any event, the proper denial of the motion for new trial does not turn on this issue, and we will assume the evidence was newly discovered.

Even if the evidence was newly discovered, it was still the defendant's burden to establish that the motion judge abused his discretion by concluding that it would not have cast real doubt on the justice of the defendant's convictions.  See Grace, 390 Mass. at 305-307; Commonwealth v. Coutu, 88 Mass. App. Ct. 686, 700 (2015).  The first hurdle for the defendant in carrying this burden was that, as the motion judge properly found, the evidence was not admissible.  As the motion judge determined, and the defendant conceded in his memorandum in support of his motion for new trial, the statements Ahern attributed to the victims are inadmissible hearsay.  Despite his concession, the defendant claims these statements would be admissible under the exception to the hearsay rule articulated in Commonwealth v. Drayton, 473 Mass. 23, 40 (2015).  We disagree.

In Drayton, the Supreme Judicial Court noted that in "the vast majority of cases, the established hearsay exceptions will continue to govern the admissibility of hearsay evidence at most criminal trials," but a "constitutional hearsay exception" might operate "in the rarest of cases, where otherwise inadmissible evidence is both truly critical to the defense's case and bears

persuasive guarantees of trustworthiness." Drayton, 473 Mass. at 40.  At issue in Drayton was a statement that was contained in an affidavit that directly contradicted the testimony of a key witness for the prosecution, who claimed to have witnessed the crime.  Id. at 24.  The court concluded that the affidavit was "critical to the defense," but that a remand was required to determine whether the affidavit bore "persuasive assurances of trustworthiness."  Id. at 36.

In this case, as noted above, the victim's statements are not directly contradictory to any of the trial testimony as were the statements recited in an affidavit in Drayton.  But even if they were, as the motion judge found, the statements do not bear persuasive guarantees of trustworthiness.  Ahern failed to have either victim sign an affidavit, and both had died before the evidentiary hearing was conducted in 2020.  When D.R. spoke with Ahern, he was under the influence of drugs, he was in poor physical condition, and his statements were disjointed.  Also, Ahern admitted that his report did not actually record the statements made to him, but rather, as the motion judge found, it "reflected statements that he pieced together from a difficult-to-understand conversation with D.R."[3]  When Ahern

---

[3] As the motion judge noted, one of the difficulties of this case is that we do not know exactly what the victims said to Ahern. Despite quoted language in the report, Ahern testified that the report was "not an affidavit" and was not based on

spoke to R.W., he was similarly struggling with substance abuse. As the motion judge found, he was living at a shelter for drug users, and "almost immediately refused to cooperate further, suggesting that his statements likewise are of doubtful reliability."

Furthermore, as the motion judge found, Ahern failed to create a reliable record of the victims' statements, and neither victim "ever confirmed in any reliable format the substance of what Ahern claimed they said." In fact, both victims were aware that Ahern wanted to document their statements and understood that their initial statements were not necessarily "on the record," and "both failed or refused to assist Ahern further after preliminary interviews." The statements that do exist do not bear hallmarks of reliability as was the case in Drayton. See Dayton, 473 Mass. at 36-38.

Finally, even if the victims' statements were admissible, and they constituted recantations, the defendant would not be entitled to a new trial. See Commonwealth v. Tobin, 392 Mass. 604, 618-619 (1984). Even as recantations, albeit equivocal,[4]

_____

contemporaneous notes because he did not take any; and Ahern was suffering from Alzheimer's disease at the time of the hearing, which made reconstruction of the statements even more difficult.
[4] As the motion judge found, at best, D.R. told Ahern he was unsure whether the defendant raped him and that he "may" have had the wrong man. Ahern's report also indicated that R.W. said that he, too, had doubts, but offered to meet with the defendant to decide which of them would apologize to the other, the

6

the evidence could only be offered as impeachment of the victims' testimony, which is not ordinarily a basis for granting a new trial.  See Commonwealth v. Lo, 428 Mass. 45, 53 (1998).  See also Commonwealth v. Berry, 481 Mass. 388, 400 (2019) (new evidence "that tends merely to impeach the credibility of a witness will not ordinarily be the basis of a new trial" [citation omitted]).  Given this, and how the reliability of the statements was impaired, the impeachment value of the evidence is questionable.  In the end, the "newly" discovered evidence would not have cast real doubt on the justice of the convictions, and the motion judge did not abuse his discretion by denying the motion for new trial on this ground.  See Commonwealth v. Santiago, 458 Mass. 405, 414 (2010) (abuse of discretion standard not altered when newly discovered evidence is alleged recantation by material witness).

2.  Trial issues.  The defendant also raises a variety of claimed trial errors which he argues should have been raised by counsel, and which resulted in him receiving ineffective assistance of counsel.  To his credit, the defendant acknowledges that these claims, as the motion judge properly concluded, could have been raised on direct appeal or in a prior motion for new trial, which limits our review to whether there

---

defendant for the rape, or R.W. for misidentifying the defendant.

7

was error, and if so, whether it created a substantial risk of a miscarriage of justice. See Commonwealth v. Randolph, 438 Mass. 290, 295-296 (2002).

A. Exclusion of mother's testimony.[5] The defendant claims that the trial judge erred by foreclosing the defendant's mother from testifying to what Detective John Ridlon asked R.W. during the showup identification procedure. In particular, the defense sought to elicit from the defendant's mother her testimony regarding something that "Ridlon repeatedly kept asking R[.W.,]" but was prevented from doing so based on the Commonwealth's hearsay objection, which the trial judge sustained. As the motion judge noted, it is not clear that this testimony was being adduced for the truth, and thus, it would not have been hearsay as the defendant now claims. See Commonwealth v. Purdy, 459 Mass. 442, 452 (2011); Mass. G. Evid. § 801(c) (2022).

As the motion judge did, we too will assume that the objection should not have been sustained, but it is not a ground for a new trial for a few reasons. First, at a sidebar

---

[5] In a single sentence, the defendant also claims that he was similarly foreclosed from testifying about the showup. This does not constitute an appellate argument, and we treat it as waived. See Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019). See also Commonwealth v. Candelario, 446 Mass. 847, 859 (2006), quoting Commonwealth v. Donahue, 430 Mass. 710, 714 n.1 (2000) (single sentence claim "[in]adequate for appellate consideration"). Even if the claim were not waived, we would reach the same result as we do with the defendant's claim relative to his mother.

discussion, defense counsel failed to explain why the intended testimony was not hearsay, let alone the constitutional argument he now makes.[6]  See <u>Commonwealth</u> v. <u>Amirault</u>, 424 Mass. 618, 641 n.15 (1997) ("A constitutional right is, in most cases . . . a right to insist that things be done in a certain way, but it is not a right that they be done in that way if the defendant does not choose to insist. . . .  [A] right that must be claimed is not denied if it is not claimed, and the proceeding in which the claim is not made is, in that respect, wholly free from error").

---

[6] At sidebar, the following colloquy occurred:

<u>The judge</u>:  "Go ahead, sir."

<u>Defense counsel</u>:  "Judge, I am at the posture now[.]  I think, she is entitled to testify as to what went on in her house, Your Honor.  You have allowed in the testimony of the boys, the testimony of Ridlon on the basis of fresh complaint.  I think she is entitled at this point now, in the inter[ests of] justice, to tell exactly what happened."

<u>The judge</u>:  "Are you making a legal argument or an emotional argument?"

<u>Defense counsel</u>:  "No, I am not making any emotional argument.  I have never tried a case on an emotional basis."

<u>The judge</u>:  "Why not?"

<u>Defense counsel</u>:  "I know, I don't think it's right to do."

<u>The judge</u>:  "Okay.  The objection is sustained.  It's hearsay.  Thank you."

Second, defense counsel failed to make an offer of proof as to what the witness's answer would have been or why the testimony was proper.[7]  "An offer of proof may assist the trial judge in making the correct ruling.  And the presence of an offer of proof in a record on appeal enables an appellate court to determine whether an error was made and, if so, how harmful it was to the defendant."  Commonwealth v. Chase, 26 Mass. App. Ct. 578, 581 (1988).  See Mass. G. Evid. § 103(a)(2) (2022).

Third, as the motion judge observed, defense counsel extensively cross-examined both victims, and thus, had every opportunity to develop this evidence from them, but he did not.  Furthermore, as the motion judge properly held, "much of what [the defendant] and his mother now claim should have been admitted is not what was said but rather what Ridlon and the victims allegedly did -- that R.W. initially had no reaction to

---

[7] In her 2021 affidavit, the defendant's mother offered for the first time that she would have testified that R.W. initially "had no reaction" upon seeing the defendant and said, "[i]t's not him;" that Ridlon repeatedly asked R.W. "something," then R.W. left the room; then D.R. came into the room and said, "that's not him," indicating the defendant, and then D.R. left the room with a police officer.  Putting aside that the defendant's mother could not indicate what Ridlon had supposedly said, the judge was not required to credit her affidavit filed forty years after the trial.  See Commonwealth v. Buckman, 461 Mass. 24, 43 (2011) ("A judge is not required to credit assertions in affidavits submitted in support of a motion for a new trial, but may evaluate such affidavits in light of factors pertinent to credibility, including bias, self-interest, and delay").

[the defendant] and was taken out of the room by Ridlon, after which another officer brought in D.R., who also allegedly failed to identify [the defendant] as his attacker. Leaving aside what the police officer asked the victims, nothing prevented [the defendant] or his mother from testifying to these events at trial."

In any event, as the Commonwealth claims, the meaningful event, i.e., that Ridlon said something to R.W. and D.R. during the showup, was in evidence. The defendant's mother testified that, when the defendant came downstairs during the showup, she observed a conversation between R.W., D.R., and Ridlon. With this evidence, nothing precluded the defendant from arguing that Ridlon may have influenced the identification procedure. To the extent there was any error, the defendant has failed to establish that it created a substantial risk of a miscarriage of justice.

B. Exclusion of the defendant's and his friends' testimony. The defendant also claims that the trial judge erred in failing to permit him and two other witnesses (Harry Coates and Edward Reid), primarily on hearsay grounds, from testifying as to what they told Ridlon on the night of the incident. The defendant asserts that these statements would have impeached Ridlon's testimony that the defendant and Coates did not mention Jackie Sindoris, Gerry Suprey, Kenny Aquino, or the Golden Egg

11

restaurant to him.  However, the claimed damage is not borne out by the record.

As the motion judge noted, the defendant and Coates had testified in detail about their activities on the night in question and that they provided that information to Ridlon.[8] Based on this testimony (described below), the jury could properly infer that the defendant's and Coates's statements to Ridlon comported with their trial testimony.  In light of this, the defendant's alibi was fully explored at trial and in the defendant's closing argument.  The trial judge's ruling precluding repetition of more of the same evidence was not an abuse of discretion let alone did it create a substantial risk of a miscarriage of justice.[9]

---

[8] Coates testified that he was with the defendant and that they had seen Jackie Sindoris and Gerry Suprey in Kenmore Square, and later went to the Golden Egg.  Coates testified that he told Ridlon whom he had been with and what he had done the previous night, including going to the Golden Egg.  The defendant testified that he encountered Kenny Aquino in Somerville, and Jackie Sindoris and Gerry Suprey in Kenmore Square, and he went to the Golden Egg.  He testified that the next morning, he told Ridlon where he was the night of the crimes, and immediately affirmed that he had similarly told the jury where he had been that night.

[9] The defendant's argument that the evidence was admissible as prior consistent statements is also without merit.  The Commonwealth had not impeached the defendant or Coates, nor had it alleged that the defendant's and Coates' alibi testimony had been fabricated.  See Commonwealth v. Wright, 444 Mass. 576, 582-583 (2005); Mass. G. Evid. 613(b) (2022).  Also, the defendant did not ask the judge to make a finding of recent

C.  The missing witness instruction.  Finally, the defendant claims that the trial judge erred first, by allowing the Commonwealth to ask the defendant, over objection, about whether witnesses that could support his alibi would be testifying, including waitresses at two restaurants, Kenny Aquino, and the defendant's Uncle Robbie; and then by giving, sua sponte, a missing witness instruction, to which there was no objection.  The defendant contends that there was no basis for the prosecutor's questions or the trial judge's instruction because the testimony of these absent witnesses would have been collateral to the issue of the defendant's innocence or cumulative of testimony that he, Reid, and Coates provided.  We disagree.

The decision to provide a missing witness instruction to the jury is "within the discretion of the trial judge, and will not be reversed unless the decision was manifestly unreasonable."  Commonwealth v. Saletino, 449 Mass. 657, 667 (2007).  "In order to determine whether there has been a sufficient foundation for a missing witness instruction, we look at '(1) whether the case against the defendant is [so strong that,] faced with the evidence, the defendant would be likely to call the missing witness if innocent; (2) whether the evidence

contrivance.  See Commonwealth v. Caruso, 476 Mass. 275, 284-285 (2017).

13

to be given by the missing witness is important, central to the case, or just collateral or cumulative; (3) whether the party who fails to call the witness has superior knowledge of the whereabouts of the witness; and (4) whether the party has a 'plausible reason' for not producing the witness.'" Commonwealth v. Broomhead, 67 Mass. App. Ct. 547, 552 (2006), quoting Commonwealth v. Ortiz, 61 Mass. App. Ct. 468, 471 (2004).

As the motion judge properly determined, the trial judge implicitly found that the foundation for a missing witness instruction had been laid. The Commonwealth's case was strong. Both victims had amply opportunity to view the defendant during the more than hourlong rapes, the victims positively identified the defendant as their rapist, the defendant fit the description the victims gave, and the police followed the defendant from the Sunnyhurst Farms store[10] at a time that contradicted his alibi.

In light of this evidence, the defendant, if innocent, would be expected to call as a witness his friend, Aquino, who could have established that the defendant could not have been in Charlestown at the time of the rapes because at approximately

_____

[10] As the motion judge also noted, the clerk at the store, Kevin Russell, a lifelong friend of the defendant, admitted that following the rapes, the defendant came to see Russell and asked about why police had come to see Russell, which suggested the defendant's consciousness of guilt.

14

12:30 A.M., he encountered Aquino in Somerville. Aquino's testimony to this effect would not have been cumulative because the defendant's other witnesses did not mention Aquino, and only one specified that they had been in Charlestown at that time.

Testimony from the defendant's uncle would have established that between 1:30 A.M. and 2 A.M., the defendant was not at Sunnyhurst Farms talking to Russell or at his house, but that he was with his uncle. In addition, Coates testified that they had run into the defendant's uncle on two occasions that night, including at 1:30 A.M. The uncle's testimony would have clarified the timing of his encounters with the defendant and eliminated the confusion from conflicting testimony. Also, at least with respect to his uncle, the defendant had superior knowledge of his whereabouts.

Furthermore, the defendant identified a waitress at a Dunkin Donuts to support his alibi but made no effort to identify the waitress or waiter at the Golden Egg, presumably a witness without any ties to the defendant suggestive of bias and who could have supported his alibi and contradicted the police officer who testified that the defendant was home at that time. The defendant provided no reason for not calling any of these witnesses. Given the above, the defendant has failed to establish that the trial judge abused his discretion in giving

15

the missing witness instruction let alone that giving it created

a substantial risk of a miscarriage of justice.

<u>Order dated October 31, 2021,
   denying motion for new
   trial affirmed</u>.

<u>Order entered April 28, 2022,
   denying motion for
   reconsideration affirmed</u>.

By the Court (Meade,
   Wolohojian & Walsh, JJ.[11]),

*Joseph F. Stanton*

Clerk

Entered:  May 16, 2023.

---

[11] The panelists are listed in order of seniority.