COMMONWEALTH *vs.* RONALD P. DEVINCENT.

Plymouth. May 3, 1995. - August 2, 1995.

Present: LIACOS, C.J., LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal,* New trial, Assistance of counsel.

In a criminal case, the trial judge did not abuse his discretion in denying,
without an evidentiary hearing, the defendant's motion for a new trial
based on a claim of ineffective assistance of counsel where the defend-
ant failed to raise a substantial issue that would merit an evidentiary
hearing. [67-69]

INDICTMENT found and returned in the Superior Court De-
partment on June 23, 1987.

A motion for a new trial, filed on December 6, 1993, was
considered by *Cortland A. Mathers, J.*

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Robert C. Thompson,* Assistant District Attorney, for the
Commonwealth.

*Greta A. Janusz* for the defendant.

LIACOS, C.J. In this case, before this court on further ap-
pellate review, we address whether the trial judge abused his
discretion in denying, without an evidentiary hearing, the de-
fendant's motion for a new trial based on a claim of ineffec-
tive assistance of counsel.[1] We conclude that the defendant
failed to raise a substantial issue that would merit an eviden-
tiary hearing under Mass. R. Crim. P. 30, 378 Mass. 900
(1979). Therefore, we affirm the denial of his motion.

_____

[1]The Appeals Court, by memorandum of decision under its Rule 1:28,
had remanded the case for the purpose of conducting an evidentiary hear-
ing on the motion. *Commonwealth* v. *DeVincent,* 37 Mass. App. Ct. 1112
(1994).

We summarize the facts. The defendant was a used automobile salesman and manager at Carney Buick Corporation (Carney Buick) in Hanover. Sometime in 1985 he left his position at Carney Buick and started his own used automobile wholesale business, East/West Auto Trade (East/West). He would purchase used automobiles from Carney Buick and resell them.

The Commonwealth's case focused on an alleged scheme created and carried out by the defendant and Patrick Moriarty, Carney Buick's comptroller, to steal funds from Carney Buick. Under this scheme, the defendant would give Moriarty a check payable to Carney Buick for each car that he purchased from Carney Buick. However, these checks typically were not deposited into Carney Buick's account. The Commonwealth presented evidence that, in this manner, the defendant "purchased" from Carney Buick 240 automobiles worth more than $717,000. Although the defendant had issued checks to Carney for that amount, some $694,357 was not deposited into Carney Buick's account.

The defendant testified in his own behalf. He stated that Moriarty had initiated an arrangement whereby, when the defendant purchased an automobile from Carney Buick, Moriarty would hold the defendant's check for several days, until the defendant resold the vehicle. At that time, the defendant would deliver to Carney Buick, from the proceeds of the resale, the cash equivalent of the check he had previously issued to Carney Buick for the automobile. Moriarty then would return the defendant's check. The defendant testified that Moriarty told him that this arrangement was at the behest of the dealership's owner, James Carney, who needed cash. The defendant also testified that he agreed to the arrangement as a "courtesy" to the dealership.[2]

Moriarty also was charged with larceny. Initially, his case was joined with the defendant's case. The defendant successfully moved to sever his case from Moriarty's because some of Moriarty's testimony, as well as some of the evidence

[2]The only other defense witness testified as a character witness.

against Moriarty, might tend to inculpate the defendant. Moriarty's testimony at his own trial, which occurred prior to the defendant's trial, tended to support the defendant's contention that he had been an unwitting participant in Moriarty's scheme. Moriarty testified that he had devised the scheme in order to generate large amounts of cash for James Carney.[3] He also testified that the defendant received a fee, ranging from $50 to $200, for each of the transactions in which he issued a check to Carney Buick and subsequently exchanged the check for cash.

On April 14, 1992, after a jury-waived trial, a judge found the defendant guilty on one indictment charging larceny over $100. The defendant subsequently filed a motion for new trial alleging that trial counsel's failure to call certain witnesses, in particular Moriarty, to corroborate his testimony amounted to constitutionally inadequate assistance of counsel. The defendant submitted five affidavits in support of his motion for a new trial, one each from: Moriarty; the defendant's brother; a former employee of the defendant at East/West; the former general sales manager at Carney Buick; and a businessman who had done business with both the defendant and Moriarty. The latter four affidavits attested generally to the defendant's good reputation. Those of the defendant's brother, the former East/West employee, and the former sales manager indicated that the defendant did not attempt to conceal his practice of swapping cash for the return of checks previously issued by him to Carney Buick. Moriarty's affidavit followed his testimony at his own trial and tended in some respects to support the defendant's assertion that he had been duped by Moriarty. Moriarty stated in his affidavit that he had assured the defendant that the scheme "was on the up and up," that James Carney knew about and consented to it, that the cash generated by the scheme inured to Carney, and that the defendant should

---

[3]Carney denied any involvement in or knowledge of the scheme. He was not charged, and testified against both Moriarty and the defendant. Moriarty was convicted after trial before a jury.

speak directly to Carney if he had any questions about the scheme. In addition to these affidavits, the transcript of Moriarty's trial was before the judge.

The judge denied the defendant's request for an evidentiary hearing, heard the motion for a new trial based upon the affidavits and arguments of counsel, and denied the motion. The defendant now asserts that the judge abused his discretion in failing to hold an evidentiary hearing before denying the motion. We disagree.

A defendant may obtain a new trial under Mass. R. Crim. P. 30 (b), "if it appears that justice may not have been done." Appellate courts generally defer to the sound discretion of the trial judge on whether a motion for a new trial requires an evidentiary hearing or whether it can be decided on the basis of the facts alleged in the affidavits. *Commonwealth* v. *Licata*, 412 Mass. 654, 660 (1992). *Fogarty* v. *Commonwealth*, 406 Mass. 103, 110 (1989). In exercising this discretion, the judge must determine whether the motion or affidavits have raised a "substantial issue" that would require an evidentiary hearing. *Commonwealth* v. *Licata*, *supra*. *Commonwealth* v. *Stewart*, 383 Mass. 253, 257 (1981). See Mass. R. Crim. P. 30 (c) (3). We have reviewed the record before us and conclude that no evidentiary hearing was required on the defendant's motion for a new trial because his motion and the affidavits accompanying it did not present a "substantial issue" to the court. See *Commonwealth* v. *Dalton*, 385 Mass. 190, 194 (1982); *Commonwealth* v. *Stewart*, *supra* at 257-258. Thus, we hold that the judge did not abuse his discretion in denying the defendant's motion for a new trial without an evidentiary hearing.

"In determining whether a 'substantial issue' meriting an evidentiary hearing under rule 30 has been raised, we look not only at the seriousness of the issue asserted, but also to the adequacy of the defendant's showing on the issue raised." *Commonwealth* v. *Stewart*, *supra*. Although we recognize that the issue of ineffectiveness of counsel is of constitutional importance, see *Commonwealth* v. *Licata*, *supra* at 661, the defendant made no showing that he was denied the effective

assistance of counsel under the appropriate standards. *Commonwealth* v. *Rodwell*, 394 Mass. 694, 701 (1985). See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974) (to prove ineffective assistance of counsel, defendant must show that "serious incompetency, inefficiency or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer . . . likely deprived the defendant of an otherwise available, substantial ground of defence").[4] For example, the defendant has failed to show that counsel's decision not to call Moriarty as a witness was "manifestly unreasonable." See *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978). The record indicates that counsel did evaluate Moriarty's potential testimony and made a tactical decision that Moriarty's testimony would not benefit the defendant.[5] In addition, nothing in the four other proffered affidavits provided any significant information about the defendant's intent to steal funds from Carney Buick, which was the disputed issue at trial.[6]

Furthermore, the defendant has not shown that his proposed witnesses would have testified in an evidentiary hearing to anything more than what was contained in the affidavits accompanying the motion, and thus has failed to demonstrate that such a hearing would have provided the judge with additional information relevant to the motion. The judge was entitled to look "not only to the seriousness of the claims presented but also to the adequacy of the defendant's factual showing on those claims." *Commonwealth* v. *Carver*, 33 Mass. App. Ct. 378, 381 (1992). For example,

[4]The standard that this court has used for testing the ineffectiveness of counsel is at least as favorable as the Federal standard. See *Commonwealth* v. *Curtis*, 417 Mass. 619, 624-625 n.4 (1994), citing *Commonwealth* v. *Fuller*, 394 Mass. 251, 256 n.3 (1985).

[5]We note that this conclusion formed the basis of the motion to sever the defendant's and Moriarty's trials.

[6]At trial, the defendant did not contest the Commonwealth's assertion that he had exchanged cash for checks issued to Carney Buick. Instead, the defense focused on the defendant's lack of intent to commit the charged crime and contended that the defendant had been unwittingly duped by Moriarty.

although the defendant focuses upon Moriarty's testimony at his trial, and asserts that the judge should have held an evidentiary hearing so that Moriarty could testify along those same lines, the transcript from Moriarty's trial was before the judge and the defendant did not indicate that Moriarty's proffered testimony would add anything to the information contained in that transcript or in his affidavit.

Finally, the judge, who had been the factfinder at the defendant's trial, was entitled to use his knowledge and evaluation of the evidence at trial not only in reaching a decision on the motion, but in determining whether to decide that motion without an evidentiary hearing. See *Commonwealth* v. *Carver, supra.* See also *Fogarty* v. *Commonwealth, supra* at 111. The judge's conclusion that the defendant's motion and affidavits did not raise a substantial issue, as well as the judge's favorable evaluation of trial counsel's performance, are entitled to substantial deference. See *Commonwealth* v. *McMaster,* 21 Mass. App. Ct. 722, 735 n.6 (1986).[7] We conclude that the judge did not abuse his discretion in denying the defendant's motion for a new trial without an evidentiary hearing.

> *Order denying motion for*
> *new trial affirmed.*

---

[7]The judge twice stated his favorable perception of trial counsel's performance. At the sentencing hearing, the judge told trial counsel that "You came as close to making a silk purse out of a sow's ear in this case as anybody I've ever come across. I'm not being critical of your advocacy." In a marginal notation on the motion for a new trial, the judge concluded that "counsel's representation of this defendant was excellent."