## Dennis Loe[1] *vs.* Sex Offender Registry Board.

No. 06-P-421.

Essex. April 14, 2008. - February 20, 2009.

Present: Cypher, Green, & Sikora, JJ.

*Due Process of Law,* Assistance of counsel, Standard of proof, Sex offender. *Sex Offender.*

A Superior Court judge properly affirmed the classification of the plaintiff as a level three sex offender by the Sex Offender Registry Board (board), and correctly denied the plaintiff's motion seeking a new hearing before the board on the ground of ineffective assistance of counsel, where the plaintiff failed to demonstrate that better work by counsel would have accomplished anything of material benefit to the plaintiff, as the facts before the board's hearing officer, considered under the guidance of the factors specified in the applicable regulations, compelled the classification of the plaintiff as a level three sex offender. [675-679] Sikora, J., concurring.

Civil action commenced in the Superior Court Department on May 5, 2004.

The case was heard by *Elizabeth M. Fahey,* J., on motions for judgment on the pleadings, and a motion for new hearing, filed on November 14, 2006, also was considered by her.

*Rebecca Young* for the plaintiff.

*David L. Chenail* for the defendant.

Green, J. In this appeal, the plaintiff contends that ineffective assistance of appointed counsel at his classification hearing before the Sex Offender Registry Board (board) caused him to be classified as a level three sex offender. The parties disagree on the standard under which his claim of ineffective assistance should be evaluated. Our review of the record leads us to conclude that the disagreement is immaterial; even were we to assume, favorably to the plaintiff, that the standard articulated in *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974), should apply,

---

[1] A pseudonym.

we agree with the Superior Court judge's assessment that the plaintiff has not established that better work by counsel would have accomplished anything of material benefit to the plaintiff. We accordingly affirm the judgment of the Superior Court and the order denying the plaintiff's motion for a new hearing before the board.

*Background.* The bulk of the material facts came into evidence at the administrative hearing as undisputed documentary information. The findings of the hearing examiner accurately summarize that information as follows.

On June 21, 1989, the petitioner approached his twenty-eight year old former girlfriend as she attempted to leave work in a taxicab. He forced her out of the taxicab and into his car, and drove her to the parking lot behind his house. In the process, he kicked her in the stomach, struck her in the face multiple times, and threatened her with a baseball bat. He then raped and threatened to kill her. When she reached home, she called the police and went by ambulance to the hospital. The defendant admitted the assault but claimed the sex was consensual. He subsequently pleaded guilty to the rape and received a sentence of from six to nine years.

On May 7, 1990, while awaiting sentencing for the rape, the plaintiff stabbed two individuals, one in the neck, the other in the chest. He pleaded guilty to armed assault with intent to kill, G. L. c. 265, § 18, and received a five- to eight-year sentence to run consecutively from the sentence for the rape.

In the same time period, the plaintiff was found guilty of possessing a firearm without a license, G. L. c. 269, § 10; of possessing a firearm with serial number removed, G. L. c. 269, § 11B; of assault and battery, G. L. c. 265, § 13A; of a threat to commit a crime, G. L. c. 275, § 2; and of concealing leased property, G. L. c. 265, § 87. He received concurrent one-year terms for these offenses.

While incarcerated, the plaintiff accrued eight disciplinary reports. The offenses included fighting with an inmate, insubordination for refusing to obey an order, possession of an illicit alcoholic substance, stealing, possession of a nine-inch long metal pipe with a one-quarter inch diameter, and threatening to stab a sex offender therapist.

The plaintiff completed the first three phases of a sex offender treatment program, but declined to participate in the fourth and final phase.[2] Though the plaintiff had used marijuana and alcohol prior to incarceration, he refused treatment for substance abuse during his incarceration.

The plaintiff was released on November 27, 2002. On July 27, 2003, he assaulted his sister and his physically and mentally disabled father.[3] They obtained an abuse prevention order. The plaintiff thereafter pleaded guilty to domestic assault and battery.

Upon completion of his sentences for the criminal offenses, the board in 2003 preliminarily assigned the plaintiff a level three classification. The plaintiff challenged that classification, and was appointed counsel to represent him before the board. After an evidentiary hearing, the hearing officer issued an eighteen-page memorandum of decision, finding the plaintiff to be at high risk of reoffending and ordering him to register as a level three sex offender. The plaintiff appealed to the Superior Court, where the hearing officer's decision was affirmed. The plaintiff filed a notice of appeal to this court, and was assigned new counsel.[4] Appellate counsel then sought a stay of proceedings in this court, to allow her to pursue a motion in the Superior Court for a new hearing before the board, claiming that prior counsel had furnished ineffective assistance. A judge of the Superior Court denied that motion, and the plaintiff's ensuing appeal from the denial was consolidated with his appeal from the judgment affirming the hearing officer's decision.

*Discussion.* As we observed in the introduction, the parties disagree on the standard that should apply to the plaintiff's

---

[2]In his memorandum of decision, the hearing examiner observed that

"the last phase . . . is by far the most intensive component. To reach this phase, an inmate must have abandoned any expressions of denial, and must have developed victim empathy. . . . Thus, the evidence of the [p]etitioner's completion of partial treatment, in context, does not alone . . . signify any measure of substantial achievement."

See *Smith* v. *Sex Offender Registry Bd.*, 65 Mass. App. Ct. 803, 811-813 (2006) (continuing denial of the offense is a legitimate enhancing factor; application of that factor to the facts must be rational).

[3]The offense occurred three months before the board hearing.

[4]Prior counsel had represented the plaintiff both before the board and in the appeal to the Superior Court.

claim of ineffective assistance of counsel. The plaintiff argues that the standard should be the same as applies to claims of ineffective assistance in the criminal context, under *Commonwealth* v. *Saferian*, 366 Mass. at 96. The board responds, and we agree, that we need not resolve the question whether *Saferian* should apply to claims of ineffective assistance before the board, because the plaintiff has not established an entitlement to relief in the present case, even if we were to assess his claim under the *Saferian* standard.[5]

For purposes of our analysis, we recognize that the plaintiff's counsel displayed numerous shortcomings before the board.[6] However, serious shortcomings in the performance of counsel do

[5]We note that the sex offender registration context differs from the criminal setting in several respects material to application of the *Saferian* standard. Quite apart from any differences in the interests at stake are a variety of procedural questions in the handling of such claims. For example, though the concurrence suggests that a claim of ineffective assistance of counsel should be directed to the board hearing examiner, see *post* at 687 n. 7, we are aware of no other setting in which such a claim is directed for resolution to an administrative agency in the first instance, and we note that the plaintiff in the present case raised his claim by motion in the Superior Court. Though the parties have vigorously briefed and argued the question whether the plaintiff's representation fell short of the *Saferian* standard, they have addressed no argument whatsoever to the procedural or practical details of how claims should be administered under *Saferian*. In the absence of briefing on the subject, and without any need to address the question in order to resolve the case before us, we are reluctant to join the suggestion in the concurrence that hearings on such claims should be considered by the hearing officers of the board, though we acknowledge the analogy between the role played by the board in the present setting and that occupied by the trial court in the criminal context. We believe it better to evaluate such questions in the context of a case where the answer will make a difference in the outcome.

[6]Hearing counsel did not advise the plaintiff of his right to submit letters from family and friends attesting to his current character and lifestyle; he was unfamiliar with the facts; he attempted to cross-examine the board's attorney under the impression that he was a witness for the board; he allowed the plaintiff to testify without preparation for direct or cross-examination; he did not timely request the plaintiff's sex offender treatment records; he was not aware of the twenty-four factors codified by 803 Code Mass. Regs. § 1.40 (2004), as the indicia of the risk of reoffense; before the board he waived his closing argument and did not file proposed findings of fact and conclusions of law; and in the Superior Court he filed a motion for judgment on the pleadings without citation to the voluminous record, did not provide a supporting memorandum of law, and waived a hearing on the motion. This conduct conflicted with numerous performance standards promulgated by the Committee for Public Counsel Services for the representation of indigent persons in sex offender registration proceedings.

not alone suffice for relief under *Saferian*; to be entitled to relief, a party claiming ineffective assistance must establish that "better work might have accomplished something material for [him]."[7] *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). The plaintiff in the present case can make no such showing; the facts before the hearing officer compelled a level three classification, under the guidance of the factors specified in the applicable regulations.

The plaintiff had used significant force to commit the sexual offense. See 803 Code Mass. Regs. § 1.40(8) (2004). At the time of hearing he had been in the community for eleven months, while the highest risk period for recidivism extended for five years. See 803 Code Mass. Regs. § 1.40(9)(a). The sexual offense was violent. See 803 Code Mass. Regs. § 1.40(9)(c)(12). The victim was a person outside his family, a circumstance enlarging the potential pool of victims. See 803 Code Mass. Regs. § 1.40(7). The plaintiff had a history of violent nonsexual offenses. See 803 Code Mass. Regs. § 1.40(9)(b), (c)(6). He continued to deny that he had raped the victim. See 803 Code Mass. Regs. § 1.40(9)(c)(13). Neither in nor out of prison had he adequately participated in the sex offender treatment program. See 803 Code Mass. Regs. § 1.40(11), (17). His behavior during and after incarceration had not been satisfactory. See 803 Code Mass. Regs. § 1.40(19). The plaintiff had a history of substance abuse. See 803 Code Mass. Regs. § 1.40(16). He had committed crimes during pretrial probation. See 803 Code Mass. Regs. § 1.40(20). Finally, he was not supervised in the community. See 803 Code Mass. Regs. § 1.40(10).

The plaintiff's claims of harm resulting from hearing counsel's shortcomings are unpersuasive. Specifically, the plaintiff cites counsel's failures (1) to generate favorable letters from family and friends; (2) to retrieve sex offender treatment records from prison; (3) to prepare the plaintiff for direct and cross-examination at the board hearing; and (4) to submit appropriate written argument in the board hearing or oral argument before the Superior Court.

As evidence of the benefit lost by reason of the first listed

---

[7] Unlike the criminal setting out of which *Saferian* arose, the party seeking relief in the present context is the plaintiff.

failure of counsel, the petitioner points to letters, which his family and friends would have submitted if asked by counsel, generally attesting to his good character, work ethic, and stable lifestyle. One came from his sister, who acknowledged the petitioner's affinity for alcohol: "When [he] drink[s] [he] get[s] very nasty but not in the sense to hurt anyone." She concluded cryptically, "I'm not sure what I can write or say in [the plaintiff's] behalf to make you believe he won't commit another sex offense. But like I said, I will stand by him always." Another came from a neighbor; it acknowledged that the petitioner had "a bit of a drinking problem." Such endorsements would not have affected the result. The record already established the plaintiff's substance abuse and the recent assault on his family members. In any case, the hearing examiner acknowledged in his decision that the plaintiff was "trying to manage his alcoholism."

Similarly unavailing is plaintiff's charge that counsel had the opportunity but did not request sex offender treatment records from prison authorities. The plaintiff does not describe what favorable facts those records would have revealed. More significantly, the plaintiff's failure to participate in the fourth phase of sex offender treatment, his threat to his therapist, and his continuing denial of the rape overcame any potential prejudice from submission of the records themselves.

The plaintiff likewise suffered no harm by reason of adverse information elicited through his unprepared testimony on direct and cross-examination. He denied raping the victim; he admitted to using cocaine after he had committed the rape but before incarceration; he stated that he would "really end up hurting someone" if he did not stop drinking; he explained that the assault on his sister consisted of putting her in a headlock after consuming "18 Heinekens"; and finally he elaborated on the circumstances leading to the stabbing of the two individuals before his incarceration. However inauspicious they may have been, such admissions did not affect his classification. He had denied committing the rape in his letter to the board. Independent evidence of substance abuse and of his inadequate effort to address the problem was abundant. The police reports describing the stabbing and the assault on his sister and father were in the record.

Finally, the failure of hearing counsel to submit appropriate

written argument at the board hearing, or oral argument before the Superior Court, did not affect the result. The undisputable information in the administrative proceedings compelled the classification. The motion judge accurately observed that better work or different counsel would not have altered the outcome in either the board or the court.

We affirm the judgment and the order denying the motion for a new administrative hearing.

*So ordered.*

SIKORA, J. (concurring). I concur in the result but not in the deferral of a standard for evaluation of the claim of ineffective assistance of counsel in the classification process of the Sexual Offender Registration Board (board). We should explicitly adopt the standard of *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), without further delay and implement it as an element of the administrative law system of registration and classification established by the Legislature.

Massachusetts decisional law authorizes an appellate court to address an issue (1) of public importance, (2) of first impression, and (3) of capable adversary briefing, even though it might be moot or otherwise unnecessary for decision of a case. See, e.g., *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943), and cases cited; *Karchmar* v. *Worcester*, 364 Mass. 124, 136 (1973); *Geehan* v. *Trawler Arlington, Inc.*, 371 Mass. 815, 817 (1977); *Commissioner of Correction* v. *Myers*, 379 Mass. 255, 261 (1979). Under those criteria this appeal presents a paradigm for a decisive and useful statement. The issue carries public importance because it involves the implementation of a statutory program serving the public safety and affecting the interests of numerous individual registrants. It lacks any binding precedent. The parties have briefed it with adversarial thoroughness and motivation, the board as the agency of implementation and the registrant as the client of counsel arranged through the Committee for Public Counsel Services, the primary provider of legal representation for registrants in the board. It is squarely available as an alternative ground of decision. The unending flow of sex

offenders from incarceration into classification assures the recurrence of the question.

In these circumstances an appellate court should resolve uncertainty, not prolong it. It need not accept the role of a sphinx without a secret. Confrontation of a substantial issue by an intermediate appellate court may be all the more appropriate because its work can bring the issue to the attention of the court of last resort and because that higher court remains available to correct or to revise the first decision with the assistance of not only the parties' arguments but also the analysis of the intermediate court.[1] By avoidance of a justiciable, significant, recurrent question of law, we risk abdication of a fundamental responsibility. "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) (Marshall, C.J.).

*Additional background.* The task and duty of hearing counsel was to pursue for his client either exemption from registration or the lowest possible level of the three classifications. The essence of that effort was to marshal evidence within the twenty-four regulatory criteria established by the board for exemption or appropriate classification of risk of reoffense or degree of dangerousness. 803 Code Mass. Regs. § 1.40 (2004).[2] The hear-

---

[1]The Supreme Judicial Court's review, of course, may reach a conclusion upon the merits or a conclusion rejecting a present resolution of the issue.

As an additional purpose for confrontation of such an issue, that court has cited the stimulation of legislative interest in the clarification of the law or in the evaluation of administrative practices. See *Diafario* v. *Commissioner of Correction*, 371 Mass. 545, 553 (1976) (Kaplan, J.).

[2]The twenty-four regulatory factors include and expand upon the statutory criteria prescribed in G. L. c. 6, § 178K(1)(*a*)-(*l*). The regulatory factors weigh the following elements of status and conduct: mental abnormality; repetitive and compulsive behavior; whether the offender was an adult who committed a sex offense on a child; the offender's age at the time of the first sex offense; adjudication as a sexually dangerous person or release from civil commitment; whether the offender has served the maximum term of incarceration; the relationship between the offender and the victim; the use of a weapon or violence, or the infliction of bodily injury; the dates, number, and nature of prior offenses; whether the offender is currently under probation or parole supervision; whether the offender is currently in sex offender-specific treatment; current home situation; physical condition; whether the sex offender was a juvenile when he committed the offense, his response to treatment, and subsequent criminal history; psychological or psychiatric profiles indicating risk to reoffend; substance or alcohol abuse; sex offender treatment while

ing examiner's determination of level three exposed the plaintiff to the broadest dissemination of his identity and history.[3]

*Discussion.* 1. *The* Saferian *standard.* Presently we have no standard to determine whether hearing counsel's representation is so deficient that it undermines the reliability of the administrative adjudication and requires a new hearing. The plaintiff

---

incarcerated; sex offender treatment while on probation or parole; recent threats; materials submitted by the sex offender and recent behavior and lifestyle of the offender in the twenty-four months prior to the date of notification; victim impact statement; whether sex offender-specific treatment was successfully completed or progressing less than satisfactorily.

[3]For level three registrants, the board transmits pertinent data to the police departments of municipalities in which the subject resides, works, and attends any institution of higher learning, and to the Federal Bureau of Investigation. A community notification plan requires a police department to notify organizations and individuals likely to encounter the registrant. The classification also requires neighboring police districts to share information of the level three individual and authorizes them to notify their residents of the identity of a registrant whom they are likely to encounter.

The police or the board must disseminate the name of the registrant; his primary and any secondary address; his work address; the nature and dates of convicted or adjudicated offenses; the individual's age, gender, race, height, weight, and eye and hair color; an available photograph; and the name and address of any institution of higher learning attended by the registrant.

The board and police have discretion to publish the information in a manner and at a time of their choice. The means of dissemination can include the Internet. All notices to the community must include a warning of criminal penalties for use of registry information to commit a crime or to engage in unlawful discrimination or harassment of the registrant and of the punishment for threatening to commit a crime. G. L. c. 6, § 178K(2)(c)(i)-(vii). 803 Code Mass. Regs. § 1.32(3)(a)-(c) (2004).

A level three offender must appear annually at the appropriate police department to verify his registration data and address. G. L. c. 6, § 178F½. 803 Code Mass. Regs. § 1.30(1) (2004). No sooner than three years from the date of final classification, a level three offender may request reclassification upon the basis of new and updated information and proof of the reduced risk of reoffense and dangerousness to the public. 803 Code Mass. Regs. § 1.37C(2)(a), (c), (e) (2004). With certain exceptions, a registrant may request termination of registration within ten years from release from custody or supervision following conviction or adjudication of the underlying sexual offense. The request must include proof, by clear and convincing evidence, that the registrant has not committed a sexual offense within ten years after the latest of the dates of his conviction, adjudication, or release from custody or supervision resulting from the underlying sexual offense. 803 Code Mass. Regs. § 1.37B(1) (2004).

For a fuller survey of the registration program, see *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.*, 428 Mass. 90, 91-95 (1998).

proposes the test of *Commonwealth* v. *Saferian,* 366 Mass. at 96:

> "whether there has been *serious* incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, *substantial* ground of defence" (emphasis supplied).

Our courts have extended the *Saferian* standard from the evaluation of criminal defense work into two civil settings. In *Care & Protection of Stephen,* 401 Mass. 144, 148-149 (1987), the Supreme Judicial Court concluded that a parent confronting the transfer of custody of her children to the State possessed a statutory right to the effective assistance of counsel and that the courts should measure effectiveness by the *Saferian* standard. In *Commonwealth* v. *Ferreira,* 67 Mass. App. Ct. 109, 114-116 (2006), this court held that a respondent facing indeterminate civil confinement as a sexually dangerous person under the scheme of G. L. c. 123A held a statutory and constitutional right to the effective assistance of counsel again to be measured under the formula of *Saferian.*

The board opposes the extension of *Saferian* into the statutory scheme for the registration of sexual offenders. It argues that the interest of the registrant in the loss of a degree of privacy lacks the weight of the interest of a criminal defendant or an alleged sexually dangerous person in the loss of his freedom or of a parent in the loss of custody of her children. It maintains that the public interest in the effectiveness of the registration program weighs against easy challenges to the classification process. It suggests a burden of proof and persuasion "higher than the one articulated in *Saferian*" for registrants alleging ineffective assistance by their attorneys. However it does not specify a heightened alternative.

Several strong considerations support the application of the *Saferian* test to the registration classification process. First, the interest of the registrant has constitutional and statutory weight. "Sex offenders have a constitutionally protected liberty and privacy interest in avoiding registration and public dissemination of

registration information." *Doe, Sex Offender Registry Bd. No.
972* v. *Sex Offender Registry Bd.*, 428 Mass. 90, 100 (1998),
citing *Doe* v. *Attorney Gen.*, 426 Mass. 136, 143 (1997).[4]
Accord *Doe* v. *Attorney Gen.*, 430 Mass. 155, 160-161 (1999).
The original statutory provision, G. L. c. 6, § 178M, added by
St. 1996, c. 239, § 1, allowed for review of the board's clas-
sification by the Superior Court and for the right to counsel
only in the Superior Court. The statutory right to counsel at the
board hearing did not exist "[b]ecause the statute [did] not
provide for an evidentiary hearing before the board." *Doe, Sex
Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.*,
*supra* at 100 n.10. By subsequent enactment, St. 1999, c. 74,
§ 2, inserting G. L. c. 6, § 178L, the Legislature expressly
entitled indigents to counsel at the board classification hearing.
"The right to counsel is of little value unless there is an expecta-
tion that counsel's assistance will be effective." *Care & Protec-
tion of Stephen*, 401 Mass. at 149.

Second, the two-part standard of *Saferian* is demanding.[5] It
should not permit the abuse of the classification process feared
by the board. The fault of the attorney must be "serious," and

---

[4]In *Doe* v. *Attorney Gen.*, 426 Mass. at 144, the court summarized the
reasons for the constitutional entitlement:

> "The combination of the following circumstances persuades us that the
> plaintiff has a liberty and privacy interest protected by the Constitution
> of the Commonwealth that entitles him to procedural due process: (1) the
> requirement that he register with local police; (2) the disclosure of ac-
> cumulated personal information on request; (3) the possible harm to his
> earning capacity; (4) the harm to his reputation; and most important,
> (5) the statutory branding of him as public danger, a sex offender. That
> statutory classification implicitly announces that, in the eyes of the State,
> the plaintiff presents a risk of committing a sex offense."

See note 3, *supra.* Level three classification exposes the registrant to poten-
tially pervasive stigmatization at his residence, workplace, and school. That
burden for the registrant serves an important benefit to the community: vigilance
against the danger of reoffense. This analysis respects both the burden and the
benefit.

[5]See *Commonwealth* v. *Filippidakis*, 29 Mass. App. Ct. 679, 688 (1991),
and cases cited, in which Justice Kaplan, also the author of *Saferian*, emphasizes
that "a heavy burden of proof is cast on a defendant who moves for a new
trial for ineffectiveness of counsel"; that the standard requires both serious
fault and substantial harm; and that the assessment of the trial judge is "entitled
to high respect."

the resulting harm to the client must be "substantial." In a civil proceeding, a slight variation of the second prong may be appropriate: the inquiry is whether a better performance by counsel "would have realistically accomplished any change in the result." *Care & Protection of Georgette*, 54 Mass. App. Ct. 778, 793 (2002), *S.C.*, 439 Mass. 28, 34-35 (2003). Those requirements do not permit minor shortcomings to obstruct the classification process, nor even larger oversights if they would not alter the classification result. The registrant must make "some showing that better work might have accomplished something material" for his position. *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977).

During its thirty-five years of application, *Saferian* has generated a number of corollaries against insubstantial arguments of ineffectiveness. The evaluation of a claim of ineffectiveness by the trier of fact (the hearing examiner in these circumstances) is entitled to special deference.[6] See, e.g., *Commonwealth* v.

---

[6]The majority report that they are reluctant to approve of the participation of the board hearing examiner in the determination of ineffective assistance of counsel. *Ante* at 676 n. 5. Whatever its source, that reluctance receives no support from administrative law practice and doctrine or from criminal procedural analogy.

As a matter of practice, board hearing examiners carry out a singularly focused mission: the determination of the level of the risk of reoffense and the degree of dangerousness posed by a released sexual offender. For that purpose they sift evidence through the screen of the detailed factors prescribed by statute, G. L. c. 6, § 178K(1)(*a*)-(*l*), and regulation, 803 Code Mass. Regs. § 1.40 (2004). By regulation, they "shall govern the conduct of every phase of the hearing," *id.* at § 1:15 (2002); they must enforce all rules of privilege recognized by law, *id.* at § 1.19 (2002); they must rule competently on issues of law, evidence, and procedure, *id.* at § 1.21 (2002); and they must render a detailed adjudicatory decision encompassing a summary of the evidence, specific findings of material fact, rulings of law on all disputed questions, and conclusions drawn from and supported by the findings and rulings, *id.* at § 1.22 (2002). For purposes of judicial review, the hearing examiner's decision is the final agency action. *Id.* at § 1.23 (2008). In this case the examiner, an attorney, produced a detailed eighteen-page decision competently resolving all issues of fact and law. As a practical matter, a hearing examiner is ideally positioned to detect, from the performance of a registrant's counsel, unfamiliarity with the statutory and regulatory criteria, the failure to offer evidence under them, the imprudence of discretionary strategies and tactics, or other seriously harmful deficiencies.

The exclusion of the hearing examiner from the determination of ineffectiveness would contradict multiple administrative law premises and doctrines supporting the competence of the administrative adjudicator: (1) the requirement by the Administrative Procedure Act of judicial respect for "the experi-

*DeVincent*, 421 Mass. 64, 69 (1995); *Commonwealth* v. *Figueroa*, 422 Mass. 72, 77 (1996). The absence of affidavit support from trial counsel (about his or her own work) weakens proof of the claim of ineffectiveness. *Commonwealth* v. *Savage*, 51 Mass. App. Ct. 500, 505 n.6 (2001). A contention of ineffectiveness by reason of an omission by counsel must show a likelihood of success of the omitted action (a motion; an objection). See, e.g., *Commonwealth* v. *Conceicao*, 388 Mass. 255, 264 (1983); *Commonwealth* v. *Comita*, 441 Mass. 86, 90-91 (2004). A client challenging a strategic or tactical judgment of counsel must show the choice to have been "manifestly unreasonable." See, e.g.,

ence, technical competence, and specialized knowledge of the agency" and for its discretionary authority, G. L. c. 30A, § 14(7); (2) judicial review confined to the record created by the agency, G. L. c. 30A, § 14(5); (3) the substantial evidence rule upholding the choice of a reasonable finding by an agency against a reasonable alternative favored by a reviewing court, *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Commn.*, 377 Mass. 897, 903 (1979); (4) the authority of the reviewing court to remand a case to the agency for supplemental fact finding, G. L. c. 30A, § 14(6); (5) the usual authority of an agency to create standards of substance and procedure for implementation of its enabling legislation, *Arthurs* v. *Board of Registration in Med.*, 383 Mass. 299, 312-313 (1981) (e.g., the commitment of "every phase of the hearing" to the supervision of the examiner by 803 Code Mass. Regs. § 1.15 [2002]); (6) the required exhaustion of administrative remedies upon factual questions, e.g., *East Chop Tennis Club* v. *Massachusetts Commn. Against Discrimination*, 364 Mass. 444, 450 (1973), and *Buteau* v. *Norfolk County Retirement Bd.*, 8 Mass. App. Ct. 391, 394-395 (1979), a policy which would place the first finding about the effectiveness of counsel with the observation, experience, and judgment of the agency adjudicator; and (7) the policy of primary jurisdiction (i.e., that an issue of a technical nature within the jurisdiction of an agency should begin there, and not in the courts), *Murphy* v. *Administrator of the Div. of Personnel Admin.*, 377 Mass. 217, 220-222 (1979) (here we have an intensely specialized issue: whether an attorney understands the law, process, and prudent practice of the agency itself). Finally, the disqualification of the hearing examiner as a fact finder upon the question of ineffectiveness leads to the impracticable notion that the Superior Court judge will somehow become the trier of that issue in a system of restrained review under the Administrative Procedure Act.

As a matter of analogy to criminal process, appellate courts (reviewing the determination of a motion for a new trial by reason of ineffective assistance) give "substantial" or "special" deference to the evaluation of trial counsel's performance by the trial judge. See *Commonwealth* v. *DeVincent*, 421 Mass. 64, 69 (1995); *Commonwealth* v. *Barnette*, 45 Mass. App. Ct. 486, 493 (1998); *Commonwealth* v. *Delong*, 60 Mass. App. Ct. 122, 127 (2003). In this administrative setting, the hearing examiner occupied the role of the trial judge. His or her direct observation of the work of the challenged attorney in his papers and especially in the hearing room deserves similar deference.

*Commonwealth* v. *Martin*, 427 Mass. 816, 822 (1998); *Commonwealth* v. *Campanonio*, 445 Mass. 39, 45 (2005). Even a substandard performance by counsel within the meaning of *Saferian* will not result in the required harm if the adverse evidence was overwhelming and the trier of fact aware of the attorney's error. See, e.g., *Commonwealth* v. *Wilcox*, 72 Mass. App. Ct. 344, 351-353 (2008).

Third, board hearing examiners at the trial stage and Superior Court judges at the first stage of review are entitled to a definitive standard for the assessment of claims of ineffective assistance. As recounted, *Saferian* furnishes a developed standard readily adaptable to the registration scheme. It does not impose a change; rather it fills a void. In an unpublished memorandum and order (which is without the force of precedent) issued pursuant to our rule 1:28, *Doe, Sex Offender Registry Bd. No. 19469* v. *Sex Offender Registry Bd.*, 70 Mass. App. Ct. 1103 (2007), we assumed without deciding that *Saferian* applied to the registrant's claim of ineffective assistance in the board proceedings and in the Superior Court review of the board decision. The panel concluded that any errors by the attorney in the board and in the court would not have caused substantial harm to the registrant's position. In the choice of "assuming without deciding" the applicability of *Saferian*, the panel cited *Commonwealth* v. *Sargent*, 449 Mass. 576, 585-586 (2007) (applying *Saferian* to proceedings for the civil commitment of sexually dangerous persons under G. L. c. 123A but declining to establish a rule because the Commonwealth was agreeable to the standard in that instance). At this point, no articulated reason appears to support a pattern of deferred guidance and ad hoc decisions. Front-line adjudicators should not have to guess at a standard at the risk of reversal or repetition of their work. We should therefore follow the example of *Commonwealth* v. *Ferreira*, 67 Mass. App. Ct. at 115, and extend the *Saferian* standard to registration proceedings.

Finally, the *Saferian* test brings the benefit of familiarity. Superior Court judges must apply it frequently in the course of postconviction criminal process. Its cumulative decisional law is available to both judges and hearing examiners. The board has not proposed an identifiable alternative. It appears unlikely that an alternative would vary significantly from the logical elements

inherent in the standard: fault by the attorney, and resulting serious harm to the client. In this case the Superior Court judge implicitly followed the logic of *Saferian*; she concluded that better work would not have altered the result in the board.[7] For the following reasons, that assessment was correct.

2. *Application of the* Saferian *standard.* The deficiencies of

---

[7]The board appears to anticipate that registrants will attempt to complicate and to pursue repetitive adjudications of their classifications by claims of ineffective assistance. That concern is understandable. Preliminarily, one might observe that registrants with real or imagined grievances against their attorneys will pursue their claims under *Saferian* or under an alternative standard. The specific standard does not generate the claim.

The civil procedural scheme for classification of sex offenders differs, of course, from the criminal process in which the *Saferian* test originated. The two primary stages of the civil process will be the administrative adjudication in the board and judicial review of that result by the Superior Court under G. L. c. 30A, § 14. The board is free to entertain claims of ineffective assistance by reasonable procedures assuring fairness and efficiency. It may define its procedures by general rulemaking or specific adjudications. See *Arthurs* v. *Board of Registration in Med.*, 383 Mass. 299, 312-315 (1981); *Massachusetts Elec. Co.* v. *Department of Pub. Util.*, 383 Mass. 675, 678-680 (1981). In proceedings at the board, the hearing examiner is well placed to observe genuinely ineffective assistance and to act to prevent any resulting unfairness either in response to a grievance from a respondent or in the exercise of his or her initiative.

In the appeal to the Superior Court, the registrant may contend that ineffective assistance in the board created one of the grounds of error recognized under G. L. c. 30A, § 14(7). With an adequate record, the Superior Court judge may be able to resolve the claim directly, as happened in this case. See *Commonwealth* v. *Sargent*, 449 Mass. at 585 n.15; *Commonwealth* v. *Ferreira*, 67 Mass. App. Ct. at 115-117. The thoroughness of the findings of board hearing examiners (the result of the detailed application of the regulatory factors and the examiners' commendable diligence) will often enable such a determination. In those instances of an uncertain record, the judge may remand the claim to the board. There the original hearing examiner should be well situated to decide the claim from his or her prior knowledge and from any necessary supplemental proceedings. The Superior Court judge remains free to exercise any additional authority conferred by G. L. c. 30A, § 14(5) (authority to take evidence of alleged irregularities invisible in the administrative record) and (6) (authority to order the board to take additional evidence).

In the criminal process, the preferred vehicle for introduction of the claim of ineffective assistance is a motion for a new trial. *Commonwealth* v. *Zinser*, 446 Mass. 807, 810-811 (2006), and cases cited. An exception to that rule permits decision of a claim on direct appeal if the factual ground of the claim appears indisputably determinable from the trial record. *Id.* at 811, and cases cited. Nothing in our discussion prevents the adaptation of those guidelines to the civil classification scheme.

hearing counsel's work summarized in the majority opinion, *ante* at 676 n. 6, establish the "serious" failing contemplated by the first part of the *Saferian* test. However it did not cause the resulting classification or "substantial" harm required by the second part. The quantity and quality of undisputed adverse evidence ordained the result. As itemized by the majority, *ante* at 677, the overwhelming weight of the regulatory factors compelled the level three classification (the force and violence of the sexual offense; the nonfamily status of the victim; a history of violent nonsexual offenses; continuing denial; inadequate participation in sex offender treatment programs; a history of substance abuse; a relatively short interim since release; continuing unsupervised status).

The plaintiff emphasized three shortcomings of hearing counsel as the cause of the substantial harm of the level three classification: (1) counsel's failure to generate favorable letters from family and friends; (2) his failure to retrieve sex offender treatment records from prison; and (3) his failure to prepare the petitioner for direct and cross-examination at the board hearing. For the reasons canvassed by the majority, *ante* at 677-679, those failings would not have made a difference in the result created by the magnitude of undisputed adverse information.

Similarly in the Superior Court, counsel's deficient written and oral work could not have changed the result dictated by the same information embodied in the administrative record.

*Conclusion.* The reasoning of the majority and the application of the *Saferian* rule converge at the same result. The former resembles the implicit application of the latter. They are likely to converge in the vast majority of cases. For the guidance of all participants in this important public safety program, we should convert the de facto practice to a de jure standard, and straightforwardly adopt the *Saferian* rule.