On January 24, 2014, the defendant pleaded guilty to aggravated rape, armed robbery, kidnapping, assault and battery by means of a dangerous weapon, and armed burglary. On October 31, 2016, the defendant moved to withdraw all guilty pleas, claiming ineffective assistance of counsel and that his pleas were not knowing, intelligent, and voluntary. A Superior Court judge, who also had been the plea judge, denied the motion without an evidentiary hearing. We affirm.
Background. At the plea hearing, the prosecutor recited the following facts underlying the indictments (which the defendant then acknowledged as true). Shortly after 2:00 A.M. on November 10, 2012, the victim was approaching her apartment. At that time, the defendant grabbed the victim from behind, covered her mouth, told her not to scream, and forced her into the apartment. In the apartment, the defendant armed himself with a knife and raped the victim in the bedroom. After that, the defendant moved the victim to the kitchen, tied her up, and demanded the personal identification code for the victim's bank card, threatening to return and kill the victim if she gave him a wrong code. The defendant then left the apartment with the victim's bank card, jewelry, and other personal items, and was later caught on video surveillance camera using the victim's bank card on an automated teller machine located close to the victim's apartment.
The defendant's girl friend testified at the grand jury hearing. She stated that the defendant told her that on the night of the incident, he met with another person who physically assaulted the victim and retrieved the bank card from her, and that the defendant merely withdrew money from the automated teller machine using the victim's bank card. The defendant's girl friend would have been unable to testify at trial because she died before the trial was scheduled to begin.
The defendant acknowledges that he was aware that his girl friend had died before he pleaded guilty. However, he now asserts that he did not at that time appreciate how this would have affected the strength of the Commonwealth's case had the matter gone to trial. Specifically, he alleged in his affidavit that he incorrectly believed that the Commonwealth still could use his girl friend's grand jury testimony against him.[2] Had he understood that the girl friend's testimony could not have been used at trial, the defendant claims, he would not have pleaded guilty. Additional details regarding the defendant's claims are reserved for later discussion.
Discussion. "A motion to withdraw a guilty plea is treated as a motion for a new trial under Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001)." Commonwealth v. Furr, 454 Mass. 101, 106 (2009). The denial of a motion for a new trial is reviewed for an abuse of discretion. Commonwealth v. Lavrinenko, 473 Mass. 42, 47 (2015). Where, as here, the motion judge was also the trial judge, her views are accorded "special deference." Commonwealth v. Sullivan, 469 Mass. 340, 351 (2014). Here, we discern no abuse of discretion in the denial of the defendant's motion.
The defendant argues that the plea agreement should be vacated on two grounds: 1) that his plea counsel was ineffective by failing to advise him about the impact of his girl friend's death on the strength of the Commonwealth's case, and 2) that based on his faulty understanding of that issue, his pleading guilty was not "voluntary, knowing, and intelligent." We address these claims in order.
The defendant faults his plea counsel for failing to inform him "about the effects of [the girl friend's] passing on the admissibility of her grand jury testimony." However, the record includes an affidavit from the defendant's plea counsel, in which she swore to the following:
"6. I discussed this issue with co-counsel on the way to one of many visits with [the defendant] at MCI-Gardner. We discussed specifically that although the untimely death of [the girl friend] was sad, it was also arguably helpful to his case.
"7. Regarding the legal effect of [the girl friend's] death, I believe I advised [the defendant], with co-counsel Erin Opperman present during a client meeting at MCI-Gardner that due to [the girl friend's] untimely passing her statements and/or grand jury testimony could not be used at trial in my opinion.
"8. Furthermore, I believe I advised [the defendant] that although helpful, her untimely death was not fatal to the case against him."
A close reading of the defendant's affidavit reveals that he does not actually state that no such conversation took place. Rather, he specifically avers only that he does "not recall ever having [such a] conversation." Under these circumstances,[3] the judge acted well within the limits of her discretion when she refused to credit the defendant's self-serving suggestions that his counsel failed to inform him that his girl friend's death weakened the Commonwealth's case. See Commonwealth v. Grant, 426 Mass. 667, 673 (1998). The defendant thus is unable to demonstrate the factual premise on which his argument depends, much less show that his plea counsel's conduct fell "measurably below that which might be expected from an ordinary fallible lawyer." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).[4]
The defendant's argument fares no better when recast as one that his mistaken understanding of the strength of the Commonwealth's case meant that his guilty plea was not "voluntary, knowing, and intelligent." The defendant concedes, as he must, that the judge "did a thorough and complete colloquy with the defendant which insured that he understood the elements of the offenses and the maximum penalties he could face." For the reasons discussed above, the defendant has not made out a case that he misunderstood the strength of the Commonwealth's case when he pleaded guilty. Under these circumstances, the judge plainly did not abuse her discretion in ruling that the defendant entered his guilty pleas voluntarily, knowingly, and intelligently.
Evidentiary hearing. For reasons stated above, the defendant failed to raise a substantial issue required to hold an evidentiary hearing, and the judge did not abuse her discretion in denying the hearing. See Commonwealth v. DeVincent, 421 Mass. 64, 67 (1995) ("[N]o evidentiary hearing was required on the defendant's motion for a new trial because his motion and the affidavits accompanying it did not present a 'substantial issue' to the court"). See also Commonwealth v. Denis, 442 Mass. 617, 634 (2004) ("There was no abuse of discretion in the motion judge's refusal to hold an evidentiary hearing on an allegation supported only by the defendant's self-serving affidavit").
Order denying defendant's motion to withdraw guilty pleas affirmed.

For purposes of this appeal, we assume, without deciding, that the Commonwealth would not have been able to use the girl friend's grand jury testimony at trial.

It also bears noting that plea counsel's affidavit specifies that named co-counsel was present for the relevant conversation (and thus might be able to contradict or corroborate her memory). Nothing in the record indicates that the defendant sought to obtain an affidavit setting forth co-counsel's recollection of such a conversation. The judge appropriately noted that such an affidavit was "conspicuously absent."

In the context of this case, the defendant would also need to demonstrate that "but for counsel's errors, [he] would not have pleaded guilty." Commonwealth v. Clarke, 460 Mass. 30, 47 (2011) (quotation omitted), abrogated on other grounds by Chaidez v. United States, 568 U.S. 342 (2013). The defendant's claim of ineffective assistance fails on this prong as well. First, it bears noting that the girl friend's grand jury testimony was not unilaterally in the Commonwealth's favor: while it certainly linked him to the crime scene and to using the victim's bank card, it also provided a basis for him to claim that he was largely a bystander as to the most serious charges. Even if the girl friend's death on balance was harmful to the Commonwealth, its case did not depend on her testimony, as there was other evidence linking the defendant to the crime (including, for example, incriminating statements made by the defendant to his sister, and surveillance records). Moreover, as the prosecutor highlighted at the plea hearing, its case against the defendant was based on circumstantial evidence, not a victim identification or forensic proof such as deoxyribonucleic acid testing or fingerprints.